REPUBLIC IRON MIN. CO. *v.* JONES.[1]

*(Circuit Court, N. D. Georgia. March 1, 1889.)*

1. COURTS—FEDERAL JURISDICTION—SUITS BY ASSIGNEES—CONTRACTS.
    An action for damages for the breach of a contract of lease is an action "founded on contract," in the sense in which that expression is used in the restriction contained in the first section of the act of March 3, 1875, which provides: "Nor shall any circuit or district court have cognizance of any suit founded on contract in favor of an assignee, unless a suit might have been prosecuted in such court to recover thereon if no assignment had been made, except in cases of promissory notes negotiable by the law-merchant, and bills of exchange."

2. SAME—PLEADING.
    In an action "founded on contract," brought by an assignee, the declaration must show that the suit could have been maintained by the assignor if no assignment had been made.

At Law. On demurrer to the declaration.

*Broyles & Johnson, Graham & Graham,* and *J. D. Conyers,* for plaintiff.
*Hopkins & Glenn, J. M. & J. W. Neel, B. H. Hill,* and *William Phillips,* for defendant.

NEWMAN, J. This case has been heard on a demurrer to the declaration; the ground of demurrer being that it is a suit brought by the assignee of a contract, when suit could not have been prosecuted by the assignor, and that therefore the court has no jurisdiction of the case. The following is a synopsis of plaintiff's declaration: Plaintiff is a corporation created by the laws of Missouri, and a citizen of that state. Defendant is a citizen of Georgia. On the 18th day of August, 1881, A. R. Silva, plaintiff's assignor, obtained a lease from defendant to certain land in Bartow county, Ga., which lease was for a term of five years, in writing, and under seal. The purpose of the lease was that Silva should mine for iron ores, have all necessary rights for railroads, houses, dams, sluiceways, etc. Silva was to pay defendant a royalty of 17 cents per ton. On the 6th day of January, 1882, Silva assigned in writing his interest in this lease to plaintiff. On said 6th day of January, 1882, plaintiff entered and took possession of said premises, and after that time performed all the covenants to be performed by Silva; but, notwithstanding this, on or about the 1st of September, 1882, the defendant with force entered the premises, and dispossessed plaintiff. Plaintiff, while in possession, had cleared the ground, opened mines, tested ores, erected houses, machinery, etc., and was by its dispossession by the defendant deprived of the use, issues, rents, and profits, etc. Defendant, after dispossessing plaintiff, commenced, and is still, mining upon said land, and retaining to himself the profits. An amendment to the declaration sets forth that on the 3d day of August, 1881, Silva made a contract with a furnace company in Tennessee, whereby he agreed to furnish 30,000 tons of iron ore within a year, at $1.50 per ton, which contract was assigned to plain-

[1] Reported by Will Haight, Esq., of the Atlanta bar.

v.37F.no.14—46

tiff, and the profits of the contract were lost by the breach of the lease by defendant. It is said in one of the contracts attached that Silva is a citizen of Missouri, and in another that he is a citizen of Georgia, but it is not alleged anywhere that he could have maintained this suit. This is held to be necessary. *Corbin* v. *County of Black Hawk*, 105 U. S. 659, and cases cited at the conclusion of the opinion, page 667. There is no contention, however, that Silva could have prosecuted this suit. It has been assumed all through that he could not, and that is taken as conceded. This suit was commenced in 1885, and the sole question discussed by counsel has been the application to the case of the language of the act of March 3, 1875, as follows:

"Nor shall any circuit or district court have cognizance of any suit founded on a contract in favor of an assignee, unless a suit might have been prosecuted in such court to recover thereon, if no assignment had been made, except in cases of promissory notes, negotiable by the law-merchant, and bills of exchange."

It is urged by counsel for plaintiff that this is not a suit "founded on contract" within the meaning of the extract from the act of 1875, just quoted. It is contended that this expression, "founded on contract," is limited in its meaning, and should be construed to cover only suits brought on the contract to recover the amount called for by the contract, or to have a specific performance of its terms; and that it should not be extended to embrace a suit for damages for a breach of a contract. This view of the law would give it a much narrower construction than its language and evident purpose justifies. A suit for damages for breach of a contract would seem to be, for present purposes at least, as much a suit "founded on contract" as a suit to recover a specific amount called for by a contract. Both are based on a contract, and require its support to sustain them. This suit is brought by the plaintiff on account of the deprivation of specified rights, which it says it acquired by the terms of the contract in writing, which it sets out in full in the declaration. The *gravamen* of its action is the violation by the defendant of his agreement contained in the contract. It is the foundation of plaintiff's rights; and, if the suit proceeded to trial, the first evidence offered by it in the case would necessarily and properly be the contract. But it is further urged that this expression, "founded on contract," as used in the act of 1875, should be construed in connection with the language of the judiciary act of 1789, "the contents of any promissory note or other chose in action," and also the language of the act of March 3, 1887. Why a change was made in the language, restrictive of the jurisdiction of the court as to suits by assignees in the act of 1875, and why the language of the original act of 1789 was readopted (so far as applicable here) in the act of 1887, is not apparent; especially as to the last enactment. It would seem probable, however, that the purpose in using the language adopted in 1875 was to simplify the matter, and to avoid the difficult questions and nice distinctions which had arisen in interpreting the expression, "the contents of any promissory note or other chose in action," as used in the original act. However this may be, it is difficult to see how the plain-

tiff is benefited by viewing the act of 1875 in connection with the other legislation on the subject. It would seem that the construction which has been given to the act of 1789 by the supreme court would be fatal to the jurisdiction in this case, even if the suit had been brought while it was in force. Without discussing any of the former cases, the case of *Corbin* v. *County of Black Hawk, supra,* is decisive of the question made in the case at bar. In the opinion, page 665, the term "the contents" is thus defined:

"The contents of a chose in action, in the sense of section 629, are the rights created by it in favor of a party in whose behalf stipulations are made in it, which he has a right to enforce in a suit founded on the contract; and a suit to enforce such stipulations is a suit to recover such contents."

This construction clearly covers the case now under consideration, for here the plaintiff seeks to enforce a stipulation, and the most important stipulation of the contract set out in its declaration, and made the foundation of its claim. In the later case of *Shoecraft* v. *Bloxham,* 124 U. S. 730, 8 Sup. Ct. Rep. 686, in the opinion of the court, this language is used:

"Section 629 of the Revised Statutes, which was in force when the suit was commenced, declares that 'no circuit court shall have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents, if no assignment had been made, except in cases of foreign bills of exchange.' The terms used, 'the contents of any promissory note or other chose in action,' were designed to embrace the rights the instrument conferred which were capable of enforcement by suit. They were not happily chosen to convey this meaning, but they have received a construction substantially to that purport in repeated decisions of this court. They were so construed in the recent case of *Corbin* v. *County of Black Hawk,* 105 U. S. 659, where the subject is fully considered, and the decisions cited. There, a suit brought to enforce the specific performance of a contract was held to be a suit to recover the contents of a chose in action, and therefore not maintainable, under the statute in question, in the circuit court of the United States, by an assignee, if it could not have been prosecuted there by the assignors had no assignment been made."

The case of *Simons* v. *Paper Co.,* 33 Fed. Rep. 193, in the circuit court of the Eastern district of Michigan, was brought after the passage of the act of March 3, 1887, and in that case it was held that "an action to recover damages for a refusal to accept and pay for merchandise purchased under an oral contract is a suit to recover the contents of a chose in action, within the meaning of the act of March 3, 1887, and a circuit court has no jurisdiction of such suit in favor of an assignee, unless it might have been prosecuted in such court, if no assignment had been made." In the opinion, the court reviews the decisions of the supreme court on the act of 1789, and derives therefrom authority for deciding as above. So that if, as has been urged by plaintiff here, a suit, to come within the restriction of the act of 1875, must be to recover "the contents" of the contract, it would seem that, following the interpretation repeatedly given the term "contents," this suit could not be maintained. The decision in the case of *Blacklock* v. *Small,* 127 U. S. 96, 8 Sup. Ct. Rep.

1096, so far as it touches upon the question here presented, would seem to be adverse to plaintiff's rights to maintain this suit. That case was brought under the act of 1875, and, while the direction of the supreme court to dismiss the bill for want of jurisdiction seems to have been mainly upon another ground, yet, so far as it affects this case at all, it is not favorable to the plaintiff's rights. Other reasons have been urged for giving this restriction the limited meaning contended for by plaintiff, some of which would be important if doubt was entertained as to its construction in this connection; but none of the reasons suggested can have force in view of what appears to be the plain meaning and intent of the language used. It seems clear, therefore, that this demurrer must be sustained, and it will be so ordered.

The circuit judge, with whom I have consulted, concurs in the conclusions reached.