CORBIN *v.* COUNTY OF BLACK HAWK.

1. As a suit to compel the specific performance of a contract, or to enforce its other stipulations, is a suit to recover the contents of a chose in action, it was not, under sect. 629, Rev. Stat., maintainable in the Circuit Court by an assignee, if it could not have been prosecuted there by the assignor, had no assignment been made.

2. The paper writing (*infra*, p. 661) is sufficient in form to assign the contract therein mentioned; and where the assignee of such contracts, each executed for a separate parcel of school lands in Iowa, by the proper county officer to a different assignor, tendered the amount due on them and brought suit for a deed of conveyance for the lands, — *Held*, 1. That his assignors, who claim an interest in the respective tracts, are, with the county and its officers, necessary parties, although by the terms of the contract the governor of the State was to execute the conveyance. 2. That the value of the matter in dispute between the complainant and the county is the amount so tendered.

APPEAL from the Circuit Court of the United States for the District of Iowa.

The case is stated in the opinion of the court.

*Mr. James D. Campbell* for the appellant.

*Mr. Galusha Parsons* for the appellee.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This case comes into this court on an appeal by the plaintiff below from a decree dismissing the amended and substituted bill of complaint, on demurrers thereto for want of jurisdiction. The defendants are the county of Blackhawk, in the State of Iowa, the auditor and the treasurer of that county, and thirty other individuals. The original bill was filed in November, 1874. The citizenship of the plaintiff, as a citizen of New York, and of all the defendants, as citizens of Iowa, is properly alleged. The bill avers that, in 1857, one John Kerr, as school commissioner of the county, being thereunto duly authorized by the laws of Iowa, made eleven several contracts in writing in respect to the sale of land, — four with one person, and one with each of seven other persons. A copy of one of the contracts is made part of the bill, each being averred to be in like

words and figures, except the name of the purchaser, the description of the land, and the amounts of money mentioned. It is in these words : —

"SCHOOL-FUND COMMISSIONER'S OFFICE,
"BLACK HAWK COUNTY, July 10, 1857.

"Contract made and entered into between John Kerr, as school-fund commissioner for the county of Black Hawk, Iowa, and Abraham Carey, of the county of Black Hawk and State of Iowa, to wit : —

"The said John Kerr, school-fund commissioner, as authorized by law, has bargained and sold, and by these presents does bargain and sell, to the said Abraham Carey the following-described tract or parcel of land, being a portion of section numbered sixteen (or lands in lieu thereof), granted to the State for the use of schools by an act of Congress entitled ' An Act supplemental to the act for the admission of the States of Iowa and Florida into the Union,' approved March 3, 1845, to wit: Lot No. 10, being the west ($\frac{1}{2}$) half of the southeast ($\frac{1}{4}$) quarter section sixteen (16), township eighty-nine (89) north, of range fourteen (14) west, containing eighty acres.

"The price agreed upon is nine and $\frac{5}{100}$ dollars per acre, amounting to the sum of seven hundred and twenty-four dollars, the one-fourth part of which, to wit, one hundred and eighty-one dollars, has been paid in cash to the said school-fund commissioner, and the balance, to wit, five hundred and forty-three dollars, secured by a promissory note bearing even date herewith and payable on or before ten years from date, bearing interest at the rate of ten per centum per annum, payable annually, on the first day of January, at the office of the said school-fund commissioner, in Black Hawk County.

"Now, if the said Abraham Carey, his heirs, executors, or administrators, shall pay or cause to be paid the interest on said note as the same falls due, together with the principal, within the time specified, then he will be entitled to receive from the governor of the State of Iowa a patent for the land herein described. In case of failure to make any of the payments aforesaid punctually as stipulated, all previous payments shall be considered forfeited, and the land subject to be sold by the school-fund commissioner, or the payment of the money enforced according to law, at the option of said commissioner.

"In testimony whereof the parties have hereunto set their hands
and seals the day and year first above written.

"(Signed)                                    JOHN KERR,      [L. S.]
                                    *"School-Fund Commissioner of Black Hawk County.*
                                    "ABRAHAM CAREY.

"In presence of—
      "D. J. COLEMAN."

The bill alleges that the cash payment specified in each con-
tract was made; that the promissory note specified in each
contract was made and delivered; that a record of each sale
was duly made, as provided by law; that each of the several
persons to whom the lands were sold "made divers payments
of money," which were credited upon their several notes by
the proper officers of the county, but the plaintiff cannot set
forth particularly the dates and amounts of the payments;
that the notes and the amounts due thereon are held by
the county as valid claims against their makers; that by the
said premises the several purchasers became the owners of
the several tracts of land; that the legal title to the lands
remained vested in the county; that on the payment of the
balance of said moneys the county was bound to cause the
lands to be conveyed to the several purchasers, or their assigns;
that afterwards the several purchasers, for money considera-
tions, respectively made and delivered to the plaintiff certain
"conveyances," a copy of one of which is made part of the
bill, each of the others being averred to be in like substance
and effect, except the name of the grantor and the description
of the lands conveyed; that the "conveyances" were duly
filed in the office of the auditor of the county; and that thereby
the plaintiff became the owner of the several contracts and the
several tracts of land.   Such copy is in these words:—

"Know all men by these presents, that I, Wm. H. McClure, in
consideration of the sum of one hundred dollars in hand paid to
me by Austin Corbin, of Kings County, State of New York, the
receipt whereof is hereby acknowledged, do hereby sell and convey
to the said Austin Corbin all the interest in the following-described
land, viz.: Lots numbers (3) three, eleven (11), and twelve (12)
being the north half of the northeast quarter, and the east half of
the southeast quarter of section sixteen (16), township eighty-nine

(89) north, of range number fourteen (14) west of the fifth principal meridian, in Black Hawk County, Iowa, which was conveyed to me by contract, now on file in the office of the county auditor of Black Hawk County, Iowa, made by and between John Kerr, school-fund commissioner of said county, and Wm. H. McClure, for the conveyance of said lands, and I hereby sell and assign to said Corbin all my rights under said contract, covenanting with him that I have not sold, assigned, or transferred the same to any person or persons.

" In witness whereof I have hereunto set my hand this first day of July, 1871.

" In presence of—                                " WM. H. McCLURE.

" DAN'L W. FOOTE."

Indorsed on back as follows : —

" This assignment filed in my office this first day of July, A. D. 1871.

" D. W. FOOTE, *Auditor.*"

The bill further alleges the willingness of the plaintiff to pay to the county the amount remaining unpaid on the notes, being the balance of the purchase-money of the several tracts of land ; that in January, 1872, he offered to pay it to the auditor of the county ; that in October, 1874, he tendered to the auditor and to the treasurer $16,197.69, as and for the payment of the balance remaining unpaid on the purchase-money of the several tracts of land, and all interest thereon ; that said sum was more than sufficient to pay the balance ; that said officers failed to accept the money so tendered, and refused to state whether they accepted or refused to accept it ; that he then and there became entitled to demand the issue of certificates of the payment of the moneys provided to be paid in said several contracts, and then and there did demand the issue of the same, which was refused ; that he brings into court for the use of the defendants the amount so tendered, to wit, $16,197.69, for the purpose of completing and perfecting the said tender, and to enable the defendants to accept the same, if they elect so to do, at any time ; that, in case said moneys should be found insufficient in amount for said purposes, he offers to pay and bring into court such further sum as may be found to be necessary ; that the said several contracts are valid

and subsisting; that the county has never undertaken to re-
scind them, or given notice of an intention to do so, or com-
menced suit to enforce payment of the purchase-money, or to
foreclose the equities of the plaintiff or of his grantors ; that no
forfeiture of the contracts could. lawfully be made by· said
county ; that the defendants other than the county and its said
two officers severally claim to have some title to or interest in
the lands, or some part thereof; that pursuant to said last-men-
tioned sales, patents have been issued for the lands, or some of
them, to the defendants, or some of them, by the governor of .
the State of Iowa, but the plaintiff cannot more particularly .
state the facts in respect to the issue of the patents; that the
plaintiff is the lawful owner of the several tracts of land ; and
that the issue of said patents has vested the legal title to said ·
premises in the patentees therein named. The prayer of the ·
bill is that the subsequent sales of the several tracts of land,
and the patents, and all conveyances of the lands by the pat-
entees, be decreed to be void and of no effect as against the'
estate of the plaintiff ; that his title to said premises be forever
quieted as against the defendants claiming any interest in the ·
lands; that each of them be enjoined from setting up any in-
terest in said premises under the sales and the patents issued
thereunder ; that the said patentees, and their several grantees,
be decreed to hold the legal title to said lands, as the trustees ·
of and for the plaintiff; and that they be compelled to convey
the same to the plaintiff upon such terms as to the court may
seem just and equitable. Three separate demurrers were filed
to the amended bill, one by the county of Black Hawk, one
by its auditor and its treasurer, and one by the remaining
defendants. In· each of the demurrers one of the causes of
demurrer assigned is, that it does not appear upon the bill that
the Circuit Court has jurisdiction of the alleged causes of action,
or of the parties, or that the plaintiff's several assignors could
have maintained actions in the Circuit Court against the demur-
ring defendants upon the said several contracts. The court ·
states in its decree that it had heard argument upon the ques-
tion of · jurisdiction, and upon no other, and that it dismissed
the amended bill upon the ground that it had no jurisdiction
of the cause.·

· The first point taken by the appellees is, that the appeal ought to be dismissed for want of jurisdiction in this court, on the ground that the matter in dispute does not exceed the sum or value of $5,000, exclusive of costs. The view urged is that the interest of each of the appellees who is alleged to have an interest in some of the lands in question is several; that each several interest is not shown to exceed the value of $5,000; and that the county of Black Hawk and its officers are not necessary or more than formal parties to the suit. But the allegations of the bill, which must be taken as true, for the purposes of this case, are, that although, under the contracts, the patents for the lands are to be issued by the governor of the State, the notes and the amounts due thereon are held by the county, the money is to be paid to the county, and the tender was made to the officers of the county who are defendants. The matter in dispute between the appellant and the county is the sum of $16,197.69, which he tendered to its officers, and which they did not accept. Under the contracts the purchaser is entitled to receive a patent from the governor only on paying the notes, which are alleged to be held by the county. To obtain the relief asked for in the bill the plaintiff must first pay that sum to the county in discharge of the notes. His title cannot be quieted as prayed for, as against the adverse claimants of the lands, until his contract obligations to the county are fulfilled. Therefore, the county and its said officers are real parties to the suit, and the matter in dispute as to them is the sum so tendered.

Although the amended bill in the record was filed in July, 1878, the counsel for the respective parties have stipulated in this court, in open court, that the suit in the Circuit Court was originally begun in November, 1874. The question of the jurisdiction of the Circuit Court is, therefore, to be determined under that clause of sect. 629 of the Revised Statutes which provides that " no Circuit Court shall have cognizance of any suit to recover the contents of any promissory note or other chose in action, in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made, except in cases of foreign bills of exchange." There can be no doubt that the

original contracts in this case are choses in action, in respect to the rights acquired thereunder by the parties thereby contracting to purchase the lands. It is equally clear that by the instruments executed to the plaintiff by such purchasers, selling and conveying to him their several interests in the several tracts of land, and assigning to him all their rights under said several contracts, he became the assignee of the contracts, as choses in action, in respect to the rights of the assignors thereunder, including their rights of action thereon which are sought to be enforced in this suit. The only question for consideration is, whether the suit is one to recover the contents of the contracts.

The appellant contends that the suit is not one to recover the contents of a chose in action; that it is not even founded upon the contracts; and that it is only a suit to determine the validity, force, and effect of certain transactions which occurred subsequently to the making of the contracts, whereby certain rights adverse to those existing under the contracts are claimed to have arisen. It is urged that the appellant does not prosecute the suit in his character of assignee, but prosecutes it because a cause of action has accrued to him through the act of the county officers in refusing to accept the tender, and through the assertion by the other individual defendants of an adverse title to the lands. But we cannot take this view of the case. The suit is really one for the specific performance of the contracts, to enforce them, to realize the fruits of the rights secured by them to the purchasers, and to reinstate the plaintiff in the position which he is entitled to occupy under the contracts as assignee thereof, notwithstanding any acts done by the county or its officers in impairment of the rights acquired by the contracts. Such a suit must be regarded as one to recover the contents of the contracts. The contents of a contract, as a chose in action, in the sense of sect. 629, are the rights created by it in favor of a party in whose behalf stipulations are made in it which he has a right to enforce in a suit founded on the contract; and a suit to enforce such stipulations is a suit to recover such contents. The promise to pay money, contained in a promissory note, is all that there is of the note. A suit to enforce the payment of the money is a suit to recover

the contents of the note, because there is nothing contained in the note but the promise. The promise to receive the money stipulated in these contracts to be paid by the purchasers, as a foundation for their right to receive patents, is, so far as this suit is concerned, the essence of the contracts; and a suit to compel the acceptance of that money is a suit to enforce such promise, and, therefore, is a suit to recover the contents of the contracts. This principle was settled in the early case of *Sere* v. *Pitot* (6 Cranch, 332), under sect. 11 of the act of Sept. 29, 1789, c. 20, which is re-enacted in sect. 629 of the Revised Statutes. There the plaintiffs were the general assignees of the effects of an insolvent debtor, by operation of law. It was contended that the statute applied only to a voluntary assignment of a particular chose in action, and that the word " contents " did not apply to accounts or unliquidated claims, but was confined to transferable paper. But the court held that the statute intended to except suits in virtue of equitable assignments, as well as suits in virtue of legal assignments, and to exclude from the Federal courts the assignee of all the open accounts of a merchant, as well as the same person when the assignee of a particular note. The court say: " The term ' other chose in action ' is broad enough to comprehend either case, and the word ' contents ' is too ambiguous in its import to restrain that general term. The ' contents ' of a note are the sum it shows to be due, and the same may, without much violence to language, be said of an account." Following out this principle, the obligation or the promise contained in a contract is its contents, when a suit is brought to enforce such obligation; and it does no violence to language to say that the suit is one to recover such contents.

In *Deshler* v. *Dodge* (16 How. 622, 631), it is said by the court, that the statute in question applies to cases " in which the suit is brought to recover the contents or to enforce the contract contained in the instrument assigned; " and that where the suit is brought to enforce the contract contained in the chose in action, the assignee is disabled, unless the suit might have been brought in the court if no assignment had been made. Again, in *Bushnell* v. *Kennedy* (9 Wall. 387), it is suggested by the court that the restriction applies to rights

of action founded on contracts which contain within themselves some promise or duty to be performed, and that such contracts may be properly said to have contents.

The amended bill in this case contains no averment showing that the suit could have been maintained by the assignors of the contracts if no assignments had been made; and it is well settled that this is necessary. *Turner* v. *Bank of North America*, 4 Dall. 8.; *Mollan* v. *Torrance*, 9 Wheat. 537; *Bank of United States* v. *Moss*, 6 How. 31; *Bradley* v. *Rhines'. Admrs.*, 8 Wall. 393.

We are, therefore, of opinion that the Circuit Court had no jurisdiction of this suit. Its decree will be affirmed, with the modification that the dismissal of the bill is without prejudice to the right of the plaintiff to bring any suit he may be advised, in the proper court; and it is

*So ordered.*