### CONN *et al. v.* CHICAGO, B. & Q. R. Co.

(*Circuit Court, S. D. Iowa, W. D.* November 13, 1891.)

**1. REMOVAL OF CAUSES—ASSIGNMENT OF CLAIM—CITIZENSHIP—EXCESSIVE FREIGHT CHARGES—CHOSES IN ACTION.**

A claim against a railroad company for overcharges in freight is not a "chose in action," within the meaning of the provision of the removal act of 1888 that the circuit court shall not have cognizance of a suit on "any promissory note or other chose in action" in favor of an assignee, unless such a suit might have been maintained if no assignment had been made; and an assignee of such claims may sue a non-resident company thereon, without regard to the citizenship of his assignors.

**2. SAME—RESIDENCE OF RAILROAD CORPORATIONS—CONSOLIDATION—CONVEYANCE OF ROADS.**

When a non-resident railroad corporation purchases and receives conveyances of all the roads in the state owned by a domestic corporation, the fact that it establishes agencies in the state, and operates the roads under the laws thereof, does not make it a domestic corporation, so as to take away its right to remove to a federal court an action brought against it in the state court by a citizen of the state. *Fitzgerald* v. *Railway Co.*, 45 Fed. Rep. 812, distinguished.

At Law. Action by J. W. Conn against the Chicago, Burlington & Quincy Railroad Company for overcharges in freight, the claims having been assigned to him by the original owners. On plea in abatement to the jurisdiction and the evidence thereon. Plea overruled.

*Alanson Clark* and *Clark Varnum*, for plaintiffs.

*Smith McPherson*, for defendant.

Before SHIRAS and WOOLSON, JJ.

SHIRAS, J. This action was brought originally in the district court of Mills county, Iowa, and was thence removed to this court upon the application of the defendant corporation, on the ground of diverse citizenship, it being averred in the petition for removal that the plaintiffs, when the suit was brought, and ever since, were, and have continued to be, citizens of Nebraska, and the defendant was and is a corporation created under the laws of the state of Illinois. The petition in the action contains a large number of counts, each one being based upon an alleged overcharge for freight shipped over the defendant's line of railroad by a number of individuals or firms, whose claims for damages for such alleged overcharges have all been assigned and transferred to the plaintiffs.

The first question arising upon the record is whether, under the statute now in force, an action based upon assigned claims of this kind can be removed from a state to the federal court, regardless of the citizenship of the assignors of the claims, or whether it is necessary, to sustain the jurisdiction, that it appear on the face of the record that the assignors of the claims, as well as the assignees, are, and were when the suit was brought, citizens of a state or states other than that of the defendant. The proviso in the amendatory act of August 13, 1888, is that the United States circuit court shall not—

"Have cognizance of any suit, except upon foreign bills of exchange, to recover the contents of any promissory note or other chose in action in favor of any assignee, or of any subsequent holder, if such instrument be payable

to bearer, and be not made by any corporation, unless such suit might have been prosecuted in such court if no such assignment or transfer had been made."

The limitation thus enacted in regard to suits upon assigned causes of action is expressly confined to those brought to recover the contents of a promissory note or other chose in action; and in *Ambler* v. *Eppinger*, 137 U. S. 480, 11 Sup. Ct. Rep. 173, it is held that the phrase "chose in action" cannot be construed to include rights of action founded on some wrongful act or some neglect of duty, causing damage, but must be limited to suits founded upon contracts containing within themselves some promise or duty to be performed. In *Deshler* v. *Dodge*, 16 How. 622, and *Bushnell* v. *Kennedy*, 9 Wall. 387, the same construction was given to the similar phrase found in the eleventh section of the act of 1789; so that it is thus clearly decided by the supreme court that the limitation found in the act of 1888, and already cited, cannot be made applicable to claims of the nature of those declared on in the present action, which are for damages resulting from the alleged violation of the duty imposed upon the railway company to charge only legal rates for the transportation of property over its line of railway.

The next proposition presented by the plea to the jurisdiction is that the Chicago, Burlington & Quincy Railroad Company must be deemed to be a citizen and resident of the states of Iowa and Nebraska, as well as of the state of Illinois; that the litigation is not, therefore, between citizens of different states; that the defendant corporation is a resident of Iowa, and, consequently, this court is without jurisdiction. The evidence submitted in support of the plea shows that the defendant is a corporation created under the laws of the state of Illinois, and the evidence on behalf of the defendant shows that under the laws of the state of Illinois the corporation had, from 1865 to 1874, the power to lease and operate connecting lines of railway in states adjoining Illinois, and under the act of March 30, 1875, it had the right to purchase the remaining interests, property, and franchises of the lessors of such railroads in adjoining states, thus enabling it to become in fact the owner of such lines of railway. It further appears from the evidence that there was organized under the laws of the state of Iowa, in the year 1853, a corporation known as the Burlington & Missouri River Railroad Company, which became the owner of a line of railway extending from the city of Burlington, Iowa, to a point within 15 miles of the city of Council Bluffs; that on the 31st day of December, 1872, by a written instrument bearing that date, the Burlington & Missouri River Railroad Company leased to the Chicago, Burlington & Quincy Railroad Company its line of railway, with all the appurtenances, in perpetuity; that on the 31st day of July, 1875, by a written instrument duly executed between the two corporations, the Burlington & Missouri sold and conveyed to the Chicago, Burlington & Quincy Company its line of railway and appurtenances in the state of Iowa, which has ever since been run and managed by the latter company, and in so doing the defendant corporation has exercised the right of eminent domain in Iowa, has transacted business at many places in Iowa, hav-

ing local establishments and officials in the state. Upon these facts, it is claimed by plaintiffs that the Chicago, Burlington & Quincy Railroad Company has in fact been consolidated with the Burlington & Missouri Company, and by the exercise of corporate power in Iowa has become an Iowa corporation, or, at least, that it must, for jurisdictional purposes, be deemed to be so far adopted as a creation of the laws of Iowa that it cannot claim to be a non-resident of the state.

The ruling and decision of the supreme court in *Nashua & L. R. Corp.* v. *Boston & L. R. Corp.*, 136 U. S. 356, 10 Sup. Ct. Rep. 1004, is decisive of this proposition. In that case it appeared that by act of the legislature of New Hampshire certain persons had been incorporated for the purpose of building so much of a line of railway, extending from Nashua, in New Hampshire, to Lowell, in Massachusetts, as was within the boundaries of the former state; and, by act of the legislature of Massachusetts, the same persons had been incorporated under the same name, for the purpose of building that portion of the line lying within the boundaries of Massachusetts. Some two years later the legislature of each of said states passed acts intended to unite the two corporations, in which the stockholders in the New Hampshire corporation were declared to be stockholders in the Massachusetts corporation, and *vice versa*, and the two corporations were declared to be united into one by the name of the Nashua & Lowell Railroad Company. It also appeared that, by written agreement between the companies, it was provided that the two roads should be operated as a single line by a common agent to be appointed by the directors of both companies, and provision was made for a complete merger of the business and property into one whole, under one joint management. Subsequently the New Hampshire company brought a suit in equity, in the circuit court of the United States for the district of Massachusetts, against the Massachusetts corporation, for a settlement of accounts, and a plea to the jurisdiction was filed, in which it was averred that the original corporations had been consolidated into one joint corporation, which must be deemed to be a citizen of both states uniting in its creation. After a very full consideration of the previous decisions of the court upon the subject of the consolidation of corporations, it was held—

"That, whatever effect may be attributed to the legislation of Massachusetts in creating a new corporation by the same name with that of the complainant, or in allowing a union of its business and property with that of the complainant, it did not change the existence of the complainant as a corporation of New Hampshire, nor its character as a citizen of that state, for the enforcement of its rights of action in the national courts against citizens of other states. Indeed, no other state could, by its legislation, change the character of that corporation, however great the rights and privileges bestowed upon it. The new corporation created by Massachusetts, though bearing the same name, composed of the same stockholders, and designed to accomplish the same purposes, is not the same corporation with the one in New Hampshire. Identity of name, powers, and purposes does not create an identity of origin or existence, any more than any other statutes, alike in language, passed by different legislative bodies, can properly be said to owe their existence to both. To each statute, and to the corporation created by it, there can be but one legislative paternity. * * * From the cases we have cited, it

is evident that by the general law railroad corporations created by two or more states, though joined in their stock, and in the division of their profits, so as to be practically a single corporation, do not lose their identity, and that each one has its existence and its standing in the courts of the country only by virtue of the legislation of the state by which it is created. The union of name, of officers, of business, and of property does not change their distinctive character as separate corporations."

Under the doctrines thus announced, it is entirely clear that the fact that the defendant corporation, created under the laws of the state of Illinois, is engaged in the operation of lines of railroad in the state of Iowa, and in that respect is exercising practically all the corporate powers conferred by the laws of Iowa upon corporations created under such laws, does not make the defendant an Iowa corporation. It remains an Illinois corporation, exercising in Iowa, under the permission and authority of the laws thereof, corporate powers, but it exercises them as a foreign corporation. Even if the evidence showed, which it does not, that the purpose, once entertained, of consolidating the Chicago, Burlington & Quincy and Burlington & Missouri Companies had been carried to a completion, the result attained would have been the union of the two companies in the work done, but not a consolidation of the original corporations into a new corporate entity; for that 's declared by the supreme court to be beyond the power of the legislatures of Illinois and Iowa to accomplish. What, in fact, was finally done by the agreements between the Chicago, Burlington & Quincy and Burlington & Missouri Companies was that the latter conveyed its line of railway to the former, which on its part agreed to operate the line under the conditions in the agreement contained. Under the rule laid down in the case just cited, the Burlington & Missouri Company, as an Iowa corporation, could sue the Chicago, Burlington & Quincy Company, as an Illinois corporation, in the federal courts in Illinois, and the latter could sue the former in the federal courts in Iowa.

In the light of this decision, it cannot be successfully argued that, under any conceivable circumstances, the Chicago, Burlington & Quincy Company, created a corporation under the laws of Illinois, can become an Iowa corporation. Being an Illinois corporation, and that only, it is, for jurisdictional purposes, to be deemed to be a citizen of Illinois, and therefore, when sued in the state courts in Iowa by a citizen of a state other than Illinois, it has the right of removal if the suit involves a sum or value in excess of $2,000.

It is urged, however, that, granting that the defendant company can only be considered to be an Illinois corporation, nevertheless it has become a resident of Iowa, because it is engaged in the transaction of business in Iowa, has established offices in the state, has acquired property in Iowa, and exercises corporate powers and franchises in connection therewith. The supreme court of the United States has repeatedly held that a corporation cannot change its citizenship or residence by engaging in business in states other than that of its creation. For a citation of these decisions, reference may be made to the cases of *Booth* v. *Manufacturing Co.*, 40 Fed. Rep. 1, and *Myers* v. *Murray*, 43 Fed. Rep. 695.

The facts of this case do not bring the same within the rule stated by Judge CALDWELL in *Fitzgerald* v. *Railway Co.*, 45 Fed. Rep. 812, in which it is held that a company formed by the consolidation of three corporations, and engaged in a common enterprise, is to be deemed a citizen of each state by which the separate corporations were created. The rule governing cases of this kind is the same as that applicable to natural persons. If A. is a citizen of the state of Illinois, he does not acquire citizenship in Iowa by becoming interested in business in Iowa, or by buying property therein; and, if he is sued in a state court in Iowa by a citizen of that state, he has the right to remove the cause into the federal court, if the amount involved is sufficient, and such right cannot be defeated by evidence showing the ownership of property by him in Iowa, or the transaction of business by him in that state. But if A., a citizen of Illinois, B., a citizen of Iowa, and C., a citizen of Nebraska, enter into a partnership for the transaction of business in one or all of the named states, and suit is brought against them as partners, for the enforcement of claims or rights existing against the partnership, in a state court of any one of the named states, then the right of removal would not exist, not because the partnership could be said to be a citizen or resident of each one of the named states, but because one of the partners was a citizen of the state wherein the suit was brought, and, by reason of his citizenship and consequent residence, the right of removal would be defeated. If, in like manner, an Illinois corporation, an Iowa corporation, and a Nebraska corporation should enter into a partnership for the purpose of uniting and operating connecting lines of railway owned by them in the three states named, then the company or consolidation thus formed, if sued upon any claim pertaining to the common or partnership business in the courts of any one of the three states under whose laws the corporations forming the partnership had been severally created, could not remove the suit into the federal court, because one of the parties defendant in that case would be a citizen and resident of the state wherein the suit was pending.

The facts shown in evidence in the present case would not justify the court in holding that the Chicago, Burlington & Quincy Company and the Burlington & Missouri Company had entered into a partnership for the operation of the lines of railway originally owned by the named corporations. The two corporations are not in partnership, nor engaged in a joint enterprise. The Burlington & Missouri first leased, and then sold, its line of railway in Iowa to the defendant company, and the latter is the sole corporation engaged in the business of operating the united lines of railway, and it is the only corporation declared against in the present action. It is therefore held that the plea to the jurisdiction is not well taken, and the same is overruled.

WOOLSON, J. I concur in the foregoing opinion.