## UTAH–NEVADA CO. v. DE LAMAR.

(Circuirt Court of Appeals, Ninth Circuit. October 3, 1904.)

No. 1,067.

1. FEDERAL COURTS—OBJECTION TO JURISDICTION.

An objection to the jurisdiction of a Circuit Court on the ground that the action is based on a contract assigned to plaintiff, and it does not appear that it could have been maintained in that court by the assignor, is one which cannot be waived, and may be raised at any time, or considered by the court on its own motion, and it need not, therefore, be presented by an assignment of error in the appellate court.

2. SAME—JURISDICTION—EVIDENCE TO ESTABLISH CITIZENSHIP.

Where the question is as to the citizenship of an individual as determining his right to maintain an action in a federal court, the fact that he is president of a corporation creates no legal presumption that he is a citizen of the same state as the corporation, the presumption that the members of a corporation are citizens of the state in which it is incorporated being indulged only for the purpose of fixing the status of the corporation as a litigant in such courts.

3. SAME—SUIT BY ASSIGNEE—PAROL CONTRACT.

A suit by the assignee of an oral contract to recover a sum of money due thereon is one "to recover the contents of a chose in action," within the meaning of section 1 of the judiciary acts of March 3, 1887, c. 373, 24 Stat. 552, and Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508], and a federal court is without jurisdiction of such suit unless it is shown by the record that it could have been maintained in such court by the assignor.

In Error to the Circuit Court of the United States for the Northern District of California.

This action was commenced March 12, 1902, in the superior court of the city and county of San Francisco, Cal., by the plaintiff, to recover of and from the defendant the sum of $3,422,636, alleged to be due and owing upon a certain agreement between Isaac E. Blake and the defendant.

The complaint, among other things, alleges: "(1) That the Utah-Nevada Company is a corporation organized and incorporated for the purpose, among other things, of dealing in real property, including mining claims, and operating, working, and developing the same, and acquiring stock in other corporations, and was such corporation at all the times hereinafter mentioned. (2) That on the 10th day of April, 1894, one Isaac E. Blake was the owner of a contract for the purchase of that certain mining claim and real property situated in Lincoln county, state of Nevada, and more particularly described as follows, to wit: The mining claims known as the 'Monitor' and 'Jim Crow' mining claims in what is now known and described as 'De Lamar,' Lincoln county, Nevada. (3) That while said Blake was the owner of said contract to purchase, and said contract had not expired and was in full force and effect, said defendant, De Lamar, agreed with said Blake for a valuable consideration that, together with said Blake he would acquire, own, work, and operate for the purpose of abstracting minerals therefrom the said mining property, and to incorporate a corporation for the purpose of acquiring, owning, working, and operating said mining property, and to furnish the necessary capital for doing the same, and, after the moneys advanced by said defendant had been repaid to him out of the proceeds of working and operating said mining property, to transfer to said Blake forty-nine per cent. of said property and of the proceeds thereof, and forty-nine per cent. of the stock in said corporation. (4) That, relying upon said agreement of

¶ 2. Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249, and Mason v. Dullagham, 27 C. C. A. 298.

said De Lamar, said Blake went with said De Lamar from the state of New York to the state of Nevada, in the year 1894, for the purpose of carrying out and performing said agreement with said De Lamar, and in said year said De Lamar, with assistance of said Blake, acquired the title to said mining property, and paid the purchase price therefor, and commenced to work, operate, and develop said mining property. (5) That thereafter, and prior to the date hereof, and between the said dates, said De Lamar received from the proceeds of the said property the purchase price advanced and paid by him as aforesaid, together with all the cost of developing and operating the said mining property, and, in addition/ thereto, as plaintiff is informed and believes, and therefore alleges, the sum of seven million dollars ($7,000,000). (6) That prior to the date hereof, the said Blake, for a valuable consideration, assigned and transferred to the Utah-Nevada Company all of his right, title, and interest in, to, and under said contract and agreement with said De Lamar to the Utah-Nevada Company, the plaintiff herein. (7) That said Blake and said Utah-Nevada Company have, and each of them has, performed on his and its part all the terms and conditions of said agreement with said De Lamar, as aforesaid, to be performed by the said Blake and the said company, but that said De Lamar has not paid or delivered to the said Blake or the said company said forty-nine per cent. of the said property, or forty-nine per cent. of the proceeds of the said mining property, or said forty-nine per cent. of the stock in said company so formed as aforesaid, or any part thereof, except the sum of $7,363.44."

Thereafter, on March 26, 1902, the defendant filed a petition in said superior court for the removal of the cause to the United States Circuit Court. It is alleged in this petition: "(6) That this suit always has been and is one of a civil nature at law, of which the Circuit Courts of the United States are given jurisdiction by the act of Congress of the United States entitled 'An act to correct the enrollment of an act approved March 3d, 1887, entitled "An act to amend sections one, two, three, and ten of the act to determine the jurisdiction of the Circuit Court of the United States, and to regulate the removal of causes from state courts, and for other purposes," approved March 3d, 1875,' approved August 13, 1888, and that this action is now pending in said superior court of the city and county of San Francisco, and that the matter in dispute therein exceeds, exclusive of interest and costs, the sum or value and the sum and value of two thousand dollars; that is to say, the said action is brought to recover the sum of $3,422,636, besides costs. (7) That the plaintiff herein was, at the time of the commencement of this action, ever since continuously has been, and now is, a corporation organized and existing under the laws of the state of Iowa, and that said plaintiff, at the time of the commencement of this action was, ever since continuously has been, and now is, a citizen and resident of the state of Iowa, and that your petitioner, the defendant, was at the time of the commencement of this action, ever since continuously has been, and now is, a citizen and resident of the city of New York, in the state of New York, and that there was, at the time of the commencement of this action, ever since continuously has been, and now is, a controversy therein between citizens of different states, to wit, a controversy between your petitioner, the defendant herein, a citizen of the state of New York, and the plaintiff herein, a citizen of the state of Iowa. (8) That there was, at the time of the commencement of this action, ever since continuously has been, and now is, a controversy therein which always has been and now is wholly between citizens of different states, and which can be fully determined as between them. That such controversy always has been during all of said last-mentioned times, and now is, wholly between the plaintiff, a citizen and resident of the state of Iowa, as aforesaid, and your petitioner, the defendant, a citizen, resident, and inhabitant of the state of New York as aforesaid, and that the plaintiff and your petitioner are the only parties to this action. (9) That this petition is made and filed before your petitioner ever has been or is required by the laws, or by any laws, of the state of California, or by the rules, or by any rule, of said superior court of the city and county of San Francisco, in which this suit was brought and is pending, to appear, or demur, or answer, or plead to the declaration or complaint of the plaintiff

herein, and that your petitioner desires to remove the same from said superior court to the Circuit Court of the United States for the Northern District of California and the Ninth Judicial District, the same being the district in which this suit always has been and now is pending, in pursuance of the provisions of the act of Congress of the United States approved March 3d, 1887, entitled 'An act to amend the act of Congress approved March 3d, 1875, entitled "An act to determine the jurisdiction of the Circuit Courts of the United States, and to regulate the removal of causes from State courts, and for other purposes," and to further regulate the jurisdiction of the Circuit Courts of the United States, and for other purposes,' and all acts explanatory and amendatory thereof, and to correct the same, and particularly an act approved August 13, 1888, to correct the enrollment of said act of March 3, 1887."

After the removal of the case the plaintiff moved the Circuit Court to remand the case to the state court "upon the grounds that the above entitled Circuit Court has no jurisdiction over said cause and the parties thereto, and that said cause was improperly and illegally removed from said superior court to said Circuit Court, for the reason that the plaintiff above named is the sole plaintiff in said cause, and the defendant above named is the sole defendant in the said cause, and each and both plaintiff and defendant are citizens of states other than the state in which said cause was commenced and were said citizens at the time of the commencement of said action, and that said plaintiff was not, at the time of the commencement of said action, or at any time since, a citizen of said state of California, and that the petition of defendant above named, upon which said cause was removed from said superior court to said Circuit Court, does not state facts or matters or things sufficient to constitute a cause for the removal of said action from said state court to said United States court, nor any cause for the removal of an action from the said state court to the United States court, provided for in the acts of Congress of the United States upon that subject."

This motion was overruled. Amended complaints and answers thereto were subsequently filed, and the case regularly came on for trial before a jury. Objections were made to the introduction of any evidence as to the agreement between Blake and the defendant, because it was not in writing, and came within the prohibited provisions of the statute of frauds.

The court below, in closing an extended opinion upon the points involved in the objections urged by defendant, said: "I have found no rule or principle of law in any of the cases that would authorize me to hold that the agreement alleged in the complaint is not an agreement for the sale of real property, or of an interest therein, either under the law of this state or under the laws of the state of New York. And I am of the opinion that the agreement alleged in the complaint cannot be established by evidence of a parol agreement under the laws of this state." After several additional offers of proof on the part of the plaintiff, the court directed the jury to find a verdict for defendant, which was accordingly done, and a judgment was rendered upon the verdict in favor of defendant for his costs.

It is assigned as error: "(1) That said Circuit Court erred in making and entering the order entered on the 19th day of July, 1902, denying said plaintiff's motion to remand said cause to the superior court of the state of California in and for the city and county of San Francisco, as prayed for in its motion to remand said cause, because both parties are nonresidents. (2) That said Circuit Court erred in exercising jurisdiction over said cause, because both parties are nonresidents."

Numerous other alleged errors are assigned to the rulings of the court in sustaining the objections of the defendant to the testimony offered by the plaintiff.

Houx & Barrett (James G. Maguire, W. H. Metson, and Hiram W. Johnson, of counsel), for plaintiff in error.

E. S. Pillsbury and Alfred Sutro (Curtis H. Lindley, of counsel), and Pillsbury, Madison & Sutro, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge (after making the foregoing statement). The first question to be considered is whether or not the Circuit Court had jurisdiction to try, hear, and determine the case. The question of jurisdiction is divisible. There are two distinct grounds upon which the plaintiff in error relies: (1) That the court erred in exercising jurisdiction over said suit, because the suit is upon an assigned chose in action, and the record does not show that the assignor and the defendant are citizens of different states; (2) the court erred in denying plaintiff in error's motion to remand said cause to the state court, because both parties were and are nonresidents, as shown by defendant's petition for removal. There will naturally arise in the discussion of either of these points some questions that are common to both. We will first take up the question in so far as it relates to the citizenship of the assignor. It is contended by the defendant in error that this point cannot be considered by this court: (1) Because the motion in the Circuit Court to remand the case was made upon the sole ground that the United States court had no jurisdiction by reason of the fact that the action was commenced in the state court in a state of which neither the plaintiff nor the defendant was a citizen, resident or inhabitant; (2) because this point was not raised in the court below; and (3) because it is not embodied in the assignments of error. These contentions cannot be sustained. The cases cited and relied upon by defendant have no application to the facts of this case. They apply solely to the class of cases which are brought under other provisions of the statute, in which certain actions may be brought in the district where the defendant resides. This character of actions does not touch the general jurisdiction of the court over such a cause between the parties, but, as was said in Construction Co. v. Gibney, 160 U. S. 217, 219, 16 Sup. Ct. 272, 40 L. Ed. 401, "affects only the proceedings taken to bring the defendant within such jurisdiction, and is a matter of personal privilege, which the defendant may insist upon or may waive, at his election; and the defendant's right to object that an action within the general jurisdiction of the court is brought in the wrong district is waived by entering a general appearance without taking the objection." There is a clear and well-settled distinction which exists between such cases and the one in hand, which does present the direct question of jurisdiction to the court, and cannot be waived. The books are full of cases where this distinction is made, and it is the duty of the court to always keep it constantly in mind. We are dealing in this case with a provision of the judiciary act which requires certain things, by which jurisdiction is conferred, to be affirmatively shown, and the consideration of such a question has no relation to the clause of the statute relating to the district in which suits may be brought. The question of the jurisdiction of the court in cases like the present one can be taken at any time pending the proceedings. It need not be presented by any assignment of error. It may be raised by the court of its own motion. Failure of the parties to raise the question, or consent to waive it, does not prevent the court from considering it. This court has twice so

decided. Craswell v. Belanger, 56 Fed. 529, 6 C. C. A. 1; German Savings & Loan Soc. v. Dormitzer, 116 Fed. 471, 53 C. C. A. 639. In Minnesota v. Northern Securities Co., 194 U. S. 48, 62, 24 Sup. Ct. 598, 48 L. Ed. 870, the court said:

"After the cause was argued here, the parties were invited to submit briefs upon the question whether the Circuit Court of the United States could take cognizance of the case upon removal from the state court. From the briefs filed in response to that invitation it appeared that both sides deemed the case a removable one, and insist that this court should consider the merits as disclosed by the pleadings and evidence. But consent of parties can never confer jurisdiction upon a federal court. If the record does not affirmatively show jurisdiction in the Circuit Court, we must, upon our own motion, so declare, and make such order as will prevent that court from exercising an authority not conferred upon it by statute. Mansfield, C. & L. M. Railway Co. v. Swan, 111 U. S. 379, 382, 4 Sup. Ct. 510, 28 L. Ed. 462; Robertson v. Cease, 97 U. S. 646, 24 L. Ed. 1057; King Bridge Co. v. Otoe County, 120 U. S. 225, 7 Sup. Ct. 552, 30 L. Ed. 623; Parker v. Ormsby, 141 U. S. 81, 11 Sup. Ct. 912, 35 L. Ed. 654; Mattingly v. Northwestern Va. R. R., 158 U. S. 53, 57, 15 Sup. Ct. 725, 39 L. Ed. 894; Great Southern Fire Proof Hotel Co. v. Jones, 177 U. S. 449, 453, 20 Sup. Ct. 690, 44 L. Ed. 482; Continental National Bank v. Buford, 191 U. S. 119, 24 Sup. Ct. 54, 48 L. Ed. 119; Defiance Water Co. v. Defiance, 191 U. S. 184, 194, 24 Sup. Ct. 63, 48 L. Ed. 140."

It is next claimed by the defendant that the record in this case shows that the defendant and plaintiff's assignor (Blake) are citizens of different states. This contention is sought to be maintained upon the ground that the petition for removal sets forth the fact that the plaintiff is a corporation organized and existing under the laws of the state of Iowa, and is a citizen and resident of that state; that the original complaint in this action was verified by Isaac E. Blake, president of the plaintiff corporation. The argument of defendant is that those who use the corporate name and exercise the faculties of a corporation are conclusively presumed to be citizens of the state wherein the corporation is organized. Marshall v. Baltimore & Ohio R. R. Co., 16 How. 325, 328, 14 L. Ed. 953; St. Louis & San Francisco Ry. Co. v. James, 161 U. S. 545, 547, 16 Sup. Ct. 621, 40 L. Ed. 802, and Barrow S. S. Co. v. Kane, 170 U. S. 100, 106, 18 Sup. Ct. 526, 42 L. Ed. 964, are cited as sustaining these views. The question under consideration in those cases was not as to the citizenship of individuals, but was confined to the status of a corporation under the Constitution and laws of the United States relating to the jurisdiction of the Circuit Courts over controversies between citizens of different states. The language used in an opinion must be read and construed in connection with the facts of the case about which the court was speaking, and when so read it becomes apparent that they do not support the defendant's contention. The particular grounds upon which this contention is based have been heretofore considered by this court, and decided adversely to the views advanced by the defendant.

In Hanchett v. Blair, 100 Fed. 817, 822, 41 C. C. A. 76, the whole subject was elaborately discussed. The difficulties which existed as to the status of corporations, and the reasons which controlled the decision of the Supreme Court in Railroad Co. v. Letson, 2 How. 497, 11 L. Ed. 353; Railroad Co. v. Wheeler, 1 Black, 286, 296, 17 L. Ed. 130, and Shaw v. Mining Co., 145 U. S. 444, 451, 12 Sup. Ct. 935, 36 L. Ed. 768,

to declare that, "where a corporation is created by the laws of a state, the legal presumption is that its members are citizens of the state in which alone the corporate body has a legal existence," and "that a suit by or against a corporation in its corporate name must be presumed to be a suit by or against citizens of the state which created the corporate body, and that no averment or evidence to the contrary is admissible for the purpose of withdrawing the suit from the jurisdiction of a court of the United States," were fully explained. The court said:

"These presumptions preserved the jurisdiction of the United States courts over corporations in accordance with the evident spirit and purpose of the Constitution, but such presumptions had no relation to the citizenship of individuals as parties to a controversy in their own right, and it would manifestly be an unauthorized extension of their scope and effect to so construe the decisions of the Supreme Court. It follows that there is no legal presumption that the individual complainant, who is also a stockholder of the defendant corporation, is a citizen of the same state as the corporation."

The rule of the Supreme Court was made to prevent the interminable litigation that might arise if every corporation, when suing or being sued in the courts, was compelled to show that each and every one of its members was a citizen of the state in which the corporation was organized. The necessity of the rule—the object in view in adopting it—was to fix the status of the corporations, and determine their rights when bringing suits or being sued. For that purpose the presumption should be indulged in. This is borne out by all the later decisions of the Supreme Court. The constant tendency of such decisions has been in the direction of putting corporations upon the same footing as natural persons in regard to the jurisdiction of suits by or against them.

In St. Louis & San Francisco Railway v. James, supra, where all of the authorities upon the subject were reviewed, the court said:

"To fully reconcile all the expressions used in these cases would be no easy task, but we think the following propositions may be fairly deduced from them: There is an indisputable legal presumption that a state corporation, when sued or suing in a Circuit Court of the United States. is composed of citizens of the state which created it, and hence such a corporation is itself deemed to come within that provision of the Constitution of the United States which confers jurisdiction upon the federal courts in 'controversies between citizens of different states.' * * * The presumption that a corporation is composed of citizens of the state which created it accompanies such corporation when it does business in another state, and it may sue or be sued in the federal courts in such other state as a citizen of the state of its original creation. We are now asked to extend the doctrine of indisputable citizenship, so that if a corporation of one state, indisputably taken, for the purpose of federal jurisdiction, to be composed of citizens of such state, is authorized by the law of another state to do business therein, and to be endowed for local purposes, with all the powers and privileges of a domestic corporation, such adopted corporation shall be deemed to be composed of citizens of the second state in such a sense as to confer jurisdiction on the federal courts at the suit of a citizen of the state of its original creation. We are unwilling to sanction such an extension of a doctrine which, as heretofore established, went to the very verge of judicial power. That doctrine began, as we have seen, in the assumption that state corporations were composed of citizens of the state which created them: but such assumption was one of fact, and was the subject of allegation and traverse, and thus the jurisdiction of the federal courts might be defeated. Then, after a long contest in this court, it was settled that the presumption of citizenship is one of law, not to be defeated by allegation or evidence to the contrary. There we are content to leave it."

There it should be left. Any attempt to extend it to the individual members of the corporation in the determination of their status as citizens of another state would be fraught with evils of the greatest magnitude, and would be extending the doctrine of the cases far beyond the "verge of judicial power."

Could this action have been originally brought by Blake in the Circuit Court of the United States if no assignment or transfer had been made by him to the corporation plaintiff herein? This is the vital question in this branch of the case, made so by the provisions of the act of Congress approved March 3, 1887, c. 373, 24 Stat. 552, and August 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]. Three judiciary acts have been passed by Congress in relation to this question, and, as some discussion has been made by counsel as to the phraseology of each, and as some of the decisions which we shall have occasion to cite refer to these different acts, it is deemed proper to quote them.

Section 11, c. 20, of the original act of Sept. 24, 1789, is as follows:

"Nor shall any District or Circuit Court have cognizance of any suit to recover the contents of any promissory note or other chose in action in favor of an assignee, unless a suit might have been prosecuted in such court to recover the said contents if no assignment had been made, except in cases of foreign bills of exchange." 1 Stat. 79.

The corresponding clause in the act of 1875 reads as follows:

"Nor shall any Circuit or District Court have cognizance of any suit founded on contract in favor of an assignee, unless a suit might have been prosecuted in such court to recover thereon if no assignment had been made, except in cases of promissory notes negotiable by the law merchant and bills of exchange." Act March 3, 1875, c. 137, 18 Stat. 470.

The provision in section 1 of the act of March 3, 1887, and August 13, 1888, is clothed in the following language:

"Nor shall any Circuit or District Court have cognizance of any suit, except upon foreign bills of exchange, to recover the contents of any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made." 24 Stat. 553; 25 Stat. 434 [U. S. Comp. St. 1901, p. 508].

It is claimed by the defendant that the case in hand falls outside of the exceptions in section 1 of the act of March 3, 1887, above quoted, because the contract between Blake and De Lamar was not in writing, and therefore was not, for that reason, a chose in action, or "instrument" in the hands of a holder having "contents." To support this contention the following authorities are cited: Bushnell v. Kennedy, 9 Wall. 392, 19 L. Ed. 736; Deshler v. Dodge, 16 How. 630, 631, 14 L. Ed. 1084; Ambler v. Eppinger, 137 U. S. 480, 11 Sup. Ct. 173, 34 L. Ed. 765; Jewett v. Bradford Savings Bank & Trust Co. (C. C.) 45 Fed. 801; Conn et al. v. C. B. & Q. R. R. Co. (C. C.) 48 Fed. 177; Buckingham v. Dake, 112 Fed. 258, 261, 50 C. C. A. 492. Does the word "instrument" as used in the act of 1887–88, limit the choses in action therein named to actions upon written instruments? The principal case relied upon by defendant is that of Ambler v. Eppinger, supra. The pith of the decision in that case is that the provision in the act of March 3, 1887, did not apply to an action of trespass brought by an assignee of

the claim to recover damages for cutting down and removing timber from the land of the assignor. This was the only question to be decided in the case, and is the only point upon which the case should be cited as an authority. In the course of the opinion in that case, Mr. Justice Field, after quoting the provisions of the statute, said:

"This act, as it appears on its face, does not embrace, within its exceptions to the jurisdiction of those courts, suits by an assignee upon claims like the demand in controversy. The exceptions, aside from suits on foreign bills of exchange, are limited to suits on promissory notes and other choses in action, where the demand sought to be enforced is represented by an instrument in writing, payable to bearer, and not made by a corporation; the words following the designation of choses in action indicating the manner in which they are to be shown. They must be such as arise upon contracts of the original parties, and not founded, like the one in controversy, upon a trespass to property."

It is, we think, apparent, in the light of the previous and subsequent decisions of the Supreme Court, in some of which Mr. Justice Field participated, that neither he nor the court intended, by the use of the words "in writing," to place such a limit to the word "instrument" in all kinds and character of cases that might arise within the provisions of the statute—to choses in action, as well as notes payable to bearer. The word "instrument" is only used in the act of 1887–88, and as there used is intended to be limited to promissory notes payable to bearer, and does not, and was not intended, to apply to "choses in action" of the character involved in this case. But be that as it may, the Supreme Court of the United States has since, as well as before, laid down the rules by which we must be guided; and, if there is a conflict between them, the later decisions must govern and control our action.

The cases that have been held to be within the prohibition of the quoted clause in the act of 1789 are suits by virtue of equitable assignments, as well as suits by virtue of legal assignments, by the assignees of open accounts by merchants. Sere v. Pitot, 6 Cranch, 332, 3 L. Ed. 240; Corbin v. Black Hawk County, 105 U. S. 665, 26 L. Ed. 1136. It also includes assignees by operation of law, receivers of corporations, assignees in bankruptcy and in insolvency. In Corbin v. County of Black Hawk, 105 U. S. 659, 665, 26 L. Ed. 1136, the court said:

"The contents of a contract, as a chose in action, in the sense of section 629, Rev. St. [U. S. Comp. St. 1901, p. 503], are the rights created by it in favor of a party in whose behalf stipulations are made in it which he has a right to enforce in a suit founded on the contract; and a suit to enforce such stipulations is a suit to recover such contents."

And, after referring to the case of Sere v. Pitot, supra, the court said:

"There the plaintiffs were the general assignees of the effects of an insolvent debtor by operation of law. It was contended that the statute applied only to a voluntary assignment of a particular chose in action, and that the word 'contents' did not apply to accounts or unliquidated claims, but was confined to transferable paper. But the court held that the statute intended to except suits in virtue of equitable assignments, as well as suits in virtue of legal assignments, and to exclude from the federal courts the assignee of all the open accounts of a merchant, as well as the same person when the assignee of a particular note. The court say: 'The term "other chose in action" is broad enough to comprehend either case, and the word "contents" is too ambiguous in its import to restrain that general term. The

"contents" of a note are the sum it shows to be due, and the same may, without much violence to language, be said of an account.' Following out this principle, the obligation or the promise contained in a contract is its contents when a suit is brought to e. force such obligation; and it does no violence to language to say that the suit is one to recover such contents. * * * The amended bill in this case contains no averment showing that the suit could have been maintained by the assignors of the contracts if no assignments had been made; and it is well settled that this is necessary. Turner v. Bank of North America, 4 Dall. 8, 1 L. Ed. 718; Mollan v. Torrance, 9 Wheat. 537, 6 L. Ed. 154; Bank of United States v. Moss, 6 How. 31, 12 L. Ed. 331; Bradley v. Rhines' Adm'rs, 8 Wall. 393, 19 L. Ed. 467."

In Plant Investment Co. v. Key West Railway Co., 152 U. S. 71, 77, 14 Sup. Ct. 483, 38 L. Ed. 358, it was held that a Circuit Court of the United States has no jurisdiction over a suit to enforce a contract for the conveyance of land brought in the state where the land is situated by the assignee of one party to the contract against the other party, if both parties to the contract are citizens of the same state, although the assignee is a citizen of a different state. The court, after referring to the doctrine announced in Corbin v. County of Black Hawk, supra, said:

"The complainant is not, it is true, designated in the pleadings or in any formal instrument as assignee of the contract between the trustees of the internal improvement fund and the defendant railway company, but the term 'assignee' in the statute covers not merely persons to whom is technically transferred the contract in controversy, but any one who, by virtue of any transfer to him, can claim its beneficial interest. The contract under which the complainant claims, to wit, its contract with the defendant company for the construction of the road, transferred to it the beneficial interest of that company in the lands covered by its contract with the trustees, and therefore brings the suit within the prohibition of section 629 of the Revised Statutes."

In Mexican National Railroad Co. v. Davidson, 157 U. S. 201, 206, 15 Sup. Ct. 563, 39 L. Ed. 672, the court, after referring to Sere v. Pitot, 6 Cranch, 332, 335, 3 L. Ed. 240; Sheldon v. Sill, 8 How. 441, 449, 12 L. Ed. 1147; Corbin v. County of Black Hawk, 105 U. S. 659, 26 L. Ed. 1136; Deshler v. Dodge, 16 How. 622, 631, 14 L. Ed. 1084; and Ambler v. Eppinger, 137 U. S. 480, 11 Sup. Ct. 173, 34 L. Ed. 765—said:

"The act of 1875 referred to suits 'founded on contract,' but the act of 1887 restored the words of the act of 1789, 'to recover the contents of any promissory note or other chose in action,' and we do not think that the words 'if such instrument be payable to bearer and be not made by any corporation' limit the comprehensiveness of 'chose in action' as construed under the act of 1789; and, as this cause of action is based on contract, we are of opinion that it is within the definition heretofore ascribed to the words 'to recover the contents of a chose in action.' This being so, it follows that the action could not have originally been brought in the Circuit Court of the United States by Davidson, the assignee of a Colorado corporation, against a Colorado corporation. * * * We must hold, therefore, as has indeed already been ruled (Tennessee v. Union & Planters' Bank, 152 U. S. 454, 461, 14 Sup. Ct. 654, 38 L. Ed. 511), that the jurisdiction of the Circuit Courts on removal by the defendant, under this section, is limited to such suits as might have been brought in that court by the plaintiff under the first section. The question is a question of jurisdiction as such, and cannot be waived. Capron v. Van Noorden, 2 Cranch, 126, 2 L. Ed. 229; Mansfield Railway Co. v. Swan, 111 U. S. 379, 4 Sup. Ct. 510, 28 L. Ed. 462; Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. 173, 32 L. Ed. 543."

The decisions in Parker v. Ormsby, 141 U. S. 81, 84, 11 Sup. Ct. 912, 35 L. Ed. 654, New Orleans v. Benjamin, 153 U. S. 411, 435, 14 Sup. Ct. 905, 38 L. Ed. 764, and Benjamin v. New Orleans, 169 U. S. 161, 163, 18 Sup. Ct. 298, 42 L. Ed. 700, are instructive upon several of the questions hereinbefore discussed.

In Parker v. Ormsby, the court, after quoting the judiciary acts of 1789, 1875, and 1887–88, said:

"It thus appears that the act of 1887, in respect to suits to recover the contents of promissory notes or other choses in action, differs from the act of 1789 only in the particular that the act of 1887 excludes, under certain circumstances, from the cognizance of the Circuit and District Courts of the United States, suits in favor 'of any subsequent holder, if such instrument be payable to bearer, and be not made by any corporation.' It is not necessary now to consider the meaning of the words just quoted; for the present suit is by an assignee of a promissory note payable, not to bearer, but to the order of the payee. And we have only to inquire as to the circumstances under which the court below could take cognizance of a suit of that character. That inquiry is not difficult of solution. It was settled by many decisions under the act of 1789 that a Circuit Court of the United States had no jurisdiction of a suit brought against the maker by the assignee of a promissory note payable to order, unless it appeared affirmatively that it could have been maintained in that court in the name of the original payee. Turner v. Bank of North America, 4 Dall. 8, 11, 1 L. Ed. 718; Montalet v. Murray, 4 Cranch, 46, 2 L. Ed. 545; Gibson v. Chew, 16 Pet. 315, 316, 10 L. Ed. 977; Coffee v. Planters' Bank of Tennessee, 13 How. 183, 187, 14 L. Ed. 105; Morgan's Executor v. Gay, 19 Wall. 81, 82, 22 L. Ed. 100. There were these recognized exceptions to that general rule in its application to promissory notes: (1) That an indorsee could sue the indorser in the Circuit Court, if they were citizens of different states, whether a suit could have been brought or not by the payee against the maker; for the indorsee would not claim through an assignment, but by virtue of a new contract between himself and the indorser. Young v. Bryan, 6 Wheat. 146, 151, 5 L. Ed. 228; Mollan v. Torrance, 9 Wheat. 537, 538, 6 L. Ed. 154. (2) The holder of a negotiable instrument payable to bearer or to a named person or bearer could sue the maker in a court of the United States without reference to the citizenship of the original payee or original holder, because his title did not come to him by assignment, but by delivery merely. Bank of Kentucky v. Wister, 2 Pet. 318, 326, 7 L. Ed. 437; Thompson v. Perrine, 106 U. S. 589, 592, 1 Sup. Ct. 564, 568, 27 L. Ed. 298; and authorities there cited. There can be no claim that the present case is within either of those exceptions. The authorities we have cited are conclusive against the right of the plaintiff to maintain this suit in the court below, unless it appeared that the original payee, Lamb, could have maintained a suit in that court upon the note and coupons. Consequently, it was necessary that the record should, as it does not, disclose his citizenship. Metcalf v. Watertown, 128 U. S. 586, 9 Sup. Ct. 173, 32 L. Ed. 543; Stevens v. Nichols, 130 U. S. 230, 9 Sup. Ct. 518, 32 L. Ed. 914; Crehore v. Ohio & Mississippi Railway, 131 U. S. 240, 243, 9 Sup. Ct. 692, 33 L. Ed. 144; Rollins v. Chaffee County (C. C.) 34 Fed. 91."

In New Orleans v. Benjamin, which was a suit to recover the contents of a chose in action within the judiciary act of 1887–88, it was held that, as the bill contained no averment that the suit could have been maintained by the assignors, the jurisdiction of the Circuit Court could not be sustained on the ground of diverse citizenship.

In Benjamin v. New Orleans, the court, among other things, said:

"The judicial power extends to controversies between citizens of different states and between citizens of a state and citizens or subjects of foreign states; but from the judiciary act of 1789 to the act of August 13, 1888, it

has been provided, in substance (the differences being immaterial here), that no Circuit Court shall 'have cognizance of any suit [quoting the statute of 1887–88].' And, to avoid the operation of this limitation, it is necessary in such cases that the record should show that the suit could have been maintained in the Circuit Court in the name of the assignor. Parker v. Ormsby, 141 U. S. 81 (11 Sup. Ct. 912, 35 L. Ed. 654)."

In Simons v. Ypsilanti Paper Co. (C. C.) 33 Fed. 193, 195, it was held by Brown, J., that an action to recover damages for a refusal to accept and pay for merchandise purchased under an oral contract is a suit to recover the contents of a chose in action, within the meaning of the act of March 3, 1887, and the Circuit Court has no jurisdiction of such suit in favor of an assignee, unless it might have been prosecuted in such court if no assignment had been made. And, after referring to several cases which we have heretofore referred to, the court said:

"From this summary of decided cases it is quite evident that when the action is founded upon an express promise between the original parties it cannot be prosecuted by the assignee of the original promisee, unless the action would have lain by the assignor. * * * No distinction is intimated between oral and written contracts, and none can be justly inferred from the language of the act. The words, 'or of any subsequent holder, if such instrument be payable to bearer, and be not made by any corporation,' were not intended as a new limitation, and are referable only to the written instruments previously mentioned. The clause was introduced for the purpose of nullifying a series of decisions under the act of 1789, which held that promissory notes and other written instruments payable to a person named 'or bearer' were not within the exceptions of the statute, because the promise was in law made directly to the bearer, and he did not take by assignment from the person named. We are clear in our opinion that it was not intended to qualify or limit in any way the words 'other chose in action.' A right of action upon an oral contract is as much a chose in action as if the contract were in writing."

We have, perhaps, quoted from the decisions of the Supreme Court at greater length than was necessary. A terse statement of the rules announced by the decisions, and their citation, is all that would be essential to explain our views; but the importance of the case in hand, and the able briefs filed by the respective counsel, have induced us to lean upon the language as used by the court as a safer and surer guide than expressions of our own, however carefully formulated from the opinions in question, would be.

In discussing the case we have endeavored to observe the rule so often expressed by the national courts that, where the question of jurisdiction is presented, we are confronted with the presumption that the cause is without the jurisdiction of the court, unless the contrary affirmatively appears. We are also aware that a decision of this court which is based upon the question of jurisdiction, where the point was not timely brought to the attention of the trial court by the parties who rely upon it, is, to say the least, always unsatisfactory. It may be that, if the attention of the lower court had been more directly drawn to the point we have discussed, the parties would have been saved the time, labor, and expense incurred in the trial thereof. But plaintiff's dereliction in this respect is not of such a character as to estop it from now raising the question for the reasons heretofore given in this opinion. Our conclusion is that the Circuit Court was without jurisdiction to try, hear,

and determine this case upon its merits, and that it erred in refusing to remand the case to the state court from whence it came.

The judgment of the Circuit Court is reversed, and the cause remanded to the Circuit Court, with directions to remand the case to the state court.