---

### KATALLA CO. v. RONES.

(Circuit Court of Appeals, Ninth Circuit. March 9, 1911.)

No. 1,919.

1. MASTER AND SERVANT (§ 286*) — INJURIES TO SERVANT — QUESTIONS FOR JURY.

In an action for injuries to a servant by the fall of the hammer attached to a pile driver, evidence *held* to require submission to the jury of the questions whether a "chock block" was attached to the pile driver as a safety appliance for the hammer to rest on when suspended, and whether such block was a usual adjunct of a pile driver as a reasonable device designed to protect workmen against injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001–1050; Dec. Dig. § 286.*]

2. MASTER AND SERVANT (§ 219*)—INJURIES TO SERVANT—ASSUMED RISK.

An employé may assume that reasonable care will be observed by his employer for his protection, except that the employé assumes the risk of a defect in machinery which is known to him, or is so patent and obvious as to be readily observable while engaged in the work, in case he continues to operate the defective machine notwithstanding such defect.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–624; Dec. Dig. § 219.*]

3. MASTER AND SERVANT (§ 219*) — INJURIES TO SERVANT — DEFECTIVE MACHINERY—ASSUMED RISK.

Plaintiff, a laborer at work on the third platform of a pile driver 50 feet or more in height, was injured by the accidental fall of the hammer due to the alleged absence of a "chock block" to hold the hammer suspended when not in use. The block should have been attached on the

fifth platform or within 10 feet of the top of the machine. Plaintiff was at the top of the pile driver twice during his prior work about it to oil the pulleys. *Held*, that the absence of the block was not such an apparent defect that plaintiff would be charged with notice thereof so as to impose on him an assumption of risk as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–624; Dec. Dig. § 219.*]

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

**4. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—EVIDENCE.**

In an action for injuries, the complaint alleged that by reason of the injuries plaintiff had lost the use of the muscles of his left leg, had lost a great deal of feeling, and that he could not properly control his left foot. Plaintiff's physician testified that there was some swelling in the limb extending to the foot and ankle; that there had been a sore on the heel which would not heal, apparently made from pressure; and that it might have been by direct injury or have resulted from pressure. *Held*, that defendant was not prejudiced by the court's permitting plaintiff to testify over objection that he had a sore on his heel, that suppurated at times, which was nearly half an inch deep, and to exhibit his foot to the jury, though the testimony was not strictly relevant under the allegations and complaint.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153; 4166; Dec. Dig. § 1050.*]

**5. TRIAL (§ 296*)—INSTRUCTIONS—INSTRUCTION AS A WHOLE.**

An instruction was not erroneous as eliminating the defense of assumed risk, where such defense was fully presented by another instruction.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–718; Dec. Dig. § 296.*]

**6. COURTS (§ 321*)—FEDERAL COURTS—CONTROVERSIES BETWEEN CITIZENS AND ALIENS.**

Under Act Aug. 13, 1888, c. 866. 25 Stat. 433 (U. S. Comp. St. 1901, p. 508), giving Circuit Courts original cognizance over controversies between citizens of a state and foreign states' citizens or subjects, an alien may sue a citizen in the Circuit Court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 845–849; Dec. Dig. § 321.*]

**7. REMOVAL OF CAUSES (§ 41*)—SUIT BY ALIEN AGAINST CITIZEN.**

A suit by an alien in a state court against citizens or a corporation being a resident of a state other than that in which the suit was instituted is removable to the federal Circuit Court.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 82½–84; Dec. Dig. § 41.*]

**8. REMOVAL OF CAUSES (§ 86*)—JURISDICTION—PETITION.**

A federal court can only acquire jurisdiction of a removed cause when the petition for removal states facts sufficient to warrant the process, as neither consent, agreement of the parties, nor estoppel can confer such jurisdiction; it being essential that the record shall affirmatively show that jurisdiction exists.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 132, 166–179; Dec. Dig. § 86.*]

**9. REMOVAL OF CAUSES (§ 100*)—FAILURE OF JURISDICTION—EFFECT.**

On removal of an action to a federal court, if the record does not affirmatively show jurisdiction. the court will on its own motion decline to exercise further jurisdiction over the cause.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 213; Dec. Dig. § 100.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

10. REMOVAL OF CAUSES (§ 108*)—DISMISSAL—GROUNDS—DISTRICT—WAIVER.
    Plaintiff, who was in fact an alien, sued defendant in the state courts of Washington to recover for an alleged injury while in defendant's employ; defendant being a citizen and resident of New York. Defendant filed a petition to remove the cause to the federal court sitting in Washington, alleging that plaintiff was a citizen of Washington and a resident of the Western district thereof. Defendant after removal answered the complaint, and entered on the trial without objection where it appeared that plaintiff was an alien, whereupon defendant moved to dismiss for want of jurisdiction. *Held*, that since the removal petition showed a valid ground for removal and the evidence disclosed an equally sufficient, though different ground, and defendant by its removal proceedings had waived its right to be sued in the district of its residence, the court had jurisdiction to try the cause, and that the motion to dismiss was properly denied.

    [Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. § 217; Dec. Dig. § 108.*]

In Error to the Circuit Court of the United States for the Northern Division of the Western District of Washington.

Action by Iver Rones against the Katalla Company. Judgment for plaintiff (182 Fed. 946), and defendant brings error. Affirmed.

Bogle, Merritt & Bogle, for plaintiff in error.

J. A. Sorley and L. C. Stevenson, for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge. This writ is from a judgment obtained by the defendant in error against the plaintiff in error on account of personal injuries received while in the latter's employ. The case was commenced in the state court, and on petition of the defendant in the original cause was removed to the Circuit Court of the United State for the Western District of Washington. The defendant was engaged in construction work which required the use of a pile driver. While at work upon such pile driver the plaintiff was injured by the accidental and unintentional falling of the hammer. The pile driver was about 50 feet in height, being provided with 5 platforms, one above the other, at a distance of about 8 feet apart, upon which the men worked in adjusting the piling within the leads for receiving the blows from the hammer. The plaintiff was at work on the third platform, and at the instant was trying to pry loose a pile that had become fastened up against the fourth platform or "guard," as it is termed in the testimony, when the hammer fell, striking him a glancing blow on the hip and thigh, causing the injury complained of. The negligence complained of is set forth in the complaint as follows:

"That the defendant was grossly negligent in the construction of said pile driver, and in not furnishing plaintiff a safe appliance and safe place to work, in this: that said pile driver was so carelessly and negligently constructed that the framework was loose and was not properly fastened or braced, and would sway back and forth to such an extent that the hammer which hung suspended would jerk the cable, and that defendant was negligent, in this: that it failed and neglected to provide a chuck or block at or near the top of said pile driver for the hammer to rest upon when so sus-

pended, so as to guard and prevent the hammer from dropping down and injuring the workmen underneath it."

The plaintiff was employed by defendant as a common laborer, and began work as such on March 15, 1909. On April 2d he was put to work on the pile driver. He worked in that capacity part of that day, the next day, and was injured on the 4th. This was the extent of his work on the pile driver at that particular time, but he had worked on one for about a month the year previous. He did not notice, so he testifies, whether there was a chock block for securing the hammer when not in operation on this machine or not at the time or before he was hurt. Another witness testified, however, that he examined the pile driver shortly after the accident, and that it contained no such device. There is further slight corroboration of this. Upon the other hand, the defendant produced a witness who says that when the machine was erected on March 29th, previous to the accident, the chock block was put in place, and another who remembers that the block, with the other parts of the pile driver, was shipped from Tacoma to Cordova, the place where the accident occurred. Other testimony was adduced tending to show that the usual method of construction of a pile driver was to provide it with a chock block attached near the top for the hammer to rest upon while not in operation, this as a means of safety to the workmen, as the hammer was liable to fall while being held suspended by the engine. The cable for raising the hammer was operated around a drum which in the present instance was held stationery by a dog, by means of which instrumentality the hammer was allowed to remain suspended while the work of getting the piling in place was going on. Opposed to this evidence was adduced to the effect that the chock block was not always used on pile drivers, and that their operation was safe without it. Under this state of the evidence, the jury, being instructed by the court, found for the plaintiff.

Several errors are assigned upon the record. We will take them up, examine, and dispose of them in the order in which they are presented by the argument of counsel in their brief.

It is first insisted, this upon motions for a nonsuit, directed verdict, and judgment notwithstanding the verdict, that the evidence shows, first, that the pile driver was furnished with a chock block, the want of which is complained of; and, second, that, if the block was not in place, plaintiff should have known it, and therefore assumed the hazard attending his service. A glance at the evidence, the purport of which, as it pertains to the question involved is above set forth, demonstrates that there was a sharp dispute first, as to whether any block or attachment of the kind was in place or affixed to the pile driver at the time; and, second, as to whether the block was a usual adjunct to such a machine as a reasonable device designed to protect the workmen against injury. Both these questions were therefore for the jury, and were properly submitted for their consideration.

As to the second contention, there exists an exception to the general rule that an employé may assume that reasonable care will be observed by his employer for his protection, which is that where a defect in machinery is known to an employé or is so patent and obvious as to

be readily observable while engaged in his work, and he continues in the use and operation thereof notwithstanding the defect, he assumes the risk and hazard attending such use. The reason for the exception is that having such knowledge or possessed of the ready means of acquiring it and shutting his eyes to palpable conditions, he elects to engage in the service, and therefore to undergo the hazard on his own account. It is said that "the question of assumption of risk is quite apart from that of contributory negligence," and that "the employé is not obliged to pass judgment upon the employer's methods of transacting his business but may assume that reasonable care will be used in furnishing the appliances necessary for its operation." Choctaw, Oklahoma, etc., R. R. Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 25, 48 L. Ed. 96.

The pile driver was a structure of considerable proportions, being 50 feet or more in height. The block in question should have been attached on the fifth platform, or within 10 feet of the top of the machine, and the plaintiff was working on the third platform, about 16 feet below where the block should have rested. These dimensions are taken from defendant's Exhibit 1, showing the plan of a pile driver. Now, can it be said as a matter of law that the plaintiff should have seen and comprehended this specific defect in the machine under such conditions? True, the plaintiff was at the top of the pile driver twice during the time he was working about it for the purpose of oiling the pulleys over which the cables ran for raising and lowering the hammer and passed above the position for the block. But it cannot be expected of employés that they shall examine machinery in detail with or about which they are required to work to determine as to the safety of its operation; nor was it to be expected that plaintiff should take pains to ascertain as to this particular defect. A prudent person might have gone up and down as he did and his attention not have been attracted to the absence of the block, or the particular condition of the structure at the point where it should have been. As, generally speaking, an employé does not assume the risk incident to his employer's negligence, the case ought to be a clear one under the exception to charge him with the assumption of the hazard which arises by reason of such negligence in failure to provide a safe place in which to work or safe implements with which or machinery about which to work. We are satisfied that the case was a proper one for the consideration of the jury.

Dr. E. M. Brown was examined as a witness touching the extent of the injuries received by the plaintiff. Among other things, he testified that there was some swelling in the limb, extending to the foot and ankle; that there has been a sore at all times on the heel which would heal over for a week or two at a time; that it was apparently made from pressure; and that "it might have been by direct injury, or it might have been from pressure." This testimony went in without objection. Prior thereto the plaintiff as a witness in his own behalf was permitted to testify, over objection, that he had a sore on his heel that suppurated at times, which was nearly one-half an inch deep, and at the same time removed his shoe and exhibited his foot

to the jury. Error is assigned because of the action of the court in permitting the testimony to go to the jury on the ground that it was irrelevant under the allegations of the complaint. The complaint states, among other things:

"That by reason thereof [the injuries received], and as a direct result thereof, plaintiff has lost the use and control of the muscles of his left leg, and has lost a great deal of feeling, and that he cannot properly control his left foot."

It may be that this testimony was not strictly relevant under the allegations of the complaint, but from a survey of the entire testimony, both that admitted with as well as that admitted without objection, it is manifest that the error was harmless. Dr. Brown explains in effect that the sore might or might not have been the result of the injury. The testimony of plaintiff, with this explanation of the physician, is too inconsequential upon which to base a reversal of the cause.

The next exception is to the instruction of the court as follows:

"Now, gentlemen, by going into these principles of law with some detail, I have not departed from the general principle, which is an easy one to bear in mind, viz.: That the defendant was under the obligation to use reasonable and ordinary care such as I have defined to provide the plaintiff with a reasonably safe place to work on, and, if it did that, it has discharged its duty. If it did not do that, it did not discharge its duty, and, if its negligence caused the injury, then, in the absence of contributory negligence, the plaintiff would be entitled to recover."

The ground of exception is that it told the jury that they could find against the defendant if they found defendant negligent as alleged, unless the plaintiff was guilty of contributory negligence. This, it is claimed, eliminated the defense of assumption of risk. That was not all of the court's instruction, however. A little later it continues:

"Now, further, even though the defendant company did not do its duty in regard to furnishing a chock block, if you find that the chock block was required under the rules that I have given you, nevertheless, if the absence of the chock block was an obvious and apparent thing, then the plaintiff by going to work or continuing to work in the absence of the chock block would assume the risk of that absence; the rule being that an employé finding himself, or being put in a position, where it is apparent and obvious to him that the employer has not furnished a reasonably safe place, nevertheless, if he continues, in spite of that apparent condition of affairs, to work there, he assumes the risk of injury resulting from that apparent condition which is open and obvious to him."

This further instruction is a complete answer to counsel's objection. The entire instructions should be construed together, and such construction obviates the objection.

The next and last exception insisted upon goes to the jurisdiction of the Circuit Court of the United States to try the cause. The removal from the state court was procured by the defendant upon its petition showing diverse citizenship, in that the plaintiff was a citizen of the state of Washington and a resident of the Western district thereof, and the defendant a citizen and resident of the state of New York. It early developed at the trial and during the introduction of evidence that the plaintiff was an alien, a subject of Norway, that he had taken out his first papers, but had not as yet been admitted to citizenship, whereupon the defendant moved to dismiss the case for want of juris-

diction; and the question presented is whether the court should have done so, it having denied the motion. It should be further stated that the defendant filed its answer to the complaint after the removal of the cause had been perfected. Under the grant of power giving the Circuit Courts original cognizance over controversies between "citizens of a state and foreign states, citizens, or subjects" (1 Supp. R. S. p. 611), there has never been any doubt that an alien may sue a citizen in such Circuit Courts. We do not understand the proposition to be questioned in the present case. The question once arose whether the statute by the limitation providing that no civil suit shall be brought against any person in any other district than that whereof he is an inhabitant, etc., prohibited an action by a citizen against an alien corporation, but it was held that such limitation was inapplicable to an alien or foreign corporation sued here; the court saying, among other things:

"To construe the provision as applicable to all suits between a citizen and an alien would leave the courts of the United States open to aliens against citizens, and close them to citizens against aliens. Such a construction is not required by the language of the provision, and would be inconsistent with the general intent of the section as a whole." In re Hohorst, Petitioner, 150 U. S. 653, 660, 14 Sup. Ct. 221, 224, 37 L. Ed. 1211.

Furthermore, a suit brought by an alien in a state court against a citizen or a corporation, being a resident of a state other than that in which the suit is instituted, is removable into the Circuit Court. Barlow v. Chicago Ry. Co. (C. C.) 164 Fed. 765; Sherwood v. Newport Co. (C. C.) 55 Fed. 1; Stalker v. Pullman Co. (C. C.) 81 Fed. 989.

But it is urged that the federal court can only acquire jurisdiction when the petition for removal states facts sufficient to warrant the process, and that no consent or agreement of the parties, or estoppel, can confer such jurisdiction to hear or determine any case wherein the essential jurisdictional facts do not appear from the record—citing Old Wagon Works v. Benedict, 67 Fed. 1, 14 C. C. A. 285; Utah-Nevada Co. v. De Lamar, 133 Fed. 113, 66 C. C. A. 179. There can be no quarrel with this contention, and it is further true that, if the record does not affirmatively show jurisdiction in the Circuit Court, the court will upon its own motion decline to exercise further jurisdiction over the cause. Minnesota v. Northern Securities Co., 194 U. S. 48, 62, 24 Sup. Ct. 598, 48 L. Ed. 870.

But this does not solve the controversy here, for the record as made by the petition for removal does show the requisite jurisdictional facts. One of the essential facts alleged, however, namely, that the plaintiff was a citizen of the state of Washington, developed on the trial to be not true, but a fact equally as cogent for removal appeared in its stead, which was that the plaintiff was an alien, and, whether the plaintiff was a resident of the state of Washington or an alien, a removal could have been had by the defendant. It cannot be denied that the very record in the case showed, when the evidence was adduced, the essential fact of alienage. In this connection, too, it must be considered that, the court having been given general cognizance of the cause, the defendant has waived jurisdiction as it respects the particular district in which it was triable. There is a fundamental distinction

between the general grant of jurisdiction over controversies between citizens of different states, or between "citizens of a state and foreign states, citizens, or subjects," and the limitation under the statute respecting the particular district in which the action is required to be instituted. The former jurisdiction can never be waived, nor can it be conferred by consent, agreement, or estoppel, but the latter sort of jurisdiction—that is, the jurisdiction to try the cause in a particular district—may under certain circumstances and conditions be waived, while even such jurisdiction may not be conferred in the first instance by consent or agreement. The distinction is clearly recognized by this court in Utah-Nevada Co. v. De Lamar, supra, wherein the court, speaking through Hawley, District Judge, says:

"The cases cited and relied upon by defendant have no application to the facts of this case. They apply solely to the class of cases which are brought under other provisions of the statute, in which certain actions may be brought in the district where the defendant resides. This character of actions does not touch the general jurisdiction of the court over such a cause between the parties."

So it was said by Mr. Chief Justice Waite in Ex parte Schollenberger, 96 U. S. 369, 378, 24 L. Ed. 853:

"The act of Congress prescribing the place where a person may be sued is not one affecting the general jurisdiction of the courts. It is rather in the nature of a personal exemption in favor of a defendant, and it is one which he may waive. If the citizenship of the parties is sufficient, a defendant may consent to be sued anywhere he pleases, and certainly jurisdiction will not be ousted because he has consented."

Again, in St. Louis, etc., Railway Co. v. McBride, 141 U. S. 127, 131, 11 Sup. Ct. 982, 983 (35 L. Ed. 659) it was said:

"Assume that it is true, as defendant alleges, that this is not a case in which jurisdiction is founded only on the fact that the controversy is between citizens of different states, but that it comes within the scope of that other clause, which provides that 'no civil suit shall be brought before either of said courts, against any person, by any original process or proceeding, in any other district than that whereof he is an inhabitant,' still the right to insist upon suit only in the one district is a personal privilege which he may waive and he does waive it by pleading to the merits."

So also in Central Trust Co. v. McGeorge, 151 U. S. 129, 132, 14 Sup. Ct. 286, 287, 38 L. Ed. 98, a case instituted subsequent to the act of 1888, in which neither party was a citizen of the state or resided in the district in which the action was brought, Mr. Justice Shiras said:

"Undoubtedly. if the defendant company which was sued in another district than that in which it had its domicile had, by a proper plea or motion, sought to avail itself of the statutory exemption, the action of the court (in dismissing the complaint) would have been right. But the defendant company did not choose to plead that provision of the statute, but entered a general appearance and joined with the complainant in its prayer for the appointment of a receiver, and thus was brought within the ruling of this court, so frequently made. that the exemption from being sued out of the district of its domicile is a personal privilege which may be waived, and which is waived by pleading to the merits."

And in Interior Construction & Improvement Co. v. Gibney, 160 U. S. 217, 219, 16 Sup. Ct. 272, 273 (40 L. Ed. 401) Mr. Justice Gray says:

"Diversity of citizenship is a condition of jurisdiction, and, when that does not appear upon the record, the court of its own motion will order the action to be dismissed. But the provision as to the particular district in which the action shall be brought does not touch the general jurisdiction of the court over such a cause between such parties; but affects only the proceedings taken to bring the defendant within such jurisdiction, and is a matter of personal privilege, which the defendant may insist upon or may waive at his election; and the defendant's right to object that an action within the general jurisdiction of the court is brought in the wrong district is waived by entering a general appearance, without taking the objection."

These are cases, it is true, where the suit or action was originally instituted in the wrong district, but the principle of waiver is the same and is of like cogency and force, whether applied in such cases or in causes removed into a wrong district. It was held in Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264, that an action commenced in a state court by a citizen of another state against a nonresident defendant, who is a citizen of a state other than that of the plaintiff, cannot be removed by the defendant into the Circuit Court of the United States. This rests upon the principle that a cause cannot be removed into a federal court or any district thereof unless it might have been brought in such court in the first instance. The case was thought to be adverse to a waiver where the removal was had from a state court to a federal district wherein the action could not have been originally instituted. But in that case the question arose on a motion to remand, there being no further or more general appearance in the federal court, so that there was no assent to jurisdiction in any way. A subsequent case, however, set at rest the application of that case. We refer to In re Moore, 209 U. S. 491, 506, 28 Sup. Ct. 585, 591, 52 L. Ed. 904. The facts of that case are in all respects like this, save that the plaintiff here is an alien, while there he was a citizen of a state other than that in which the district was situated to which the removal was had. In that case the court, speaking through Mr. Justice Brewer, after indicating the fact that a petition for removal and bond are in the nature of process, says:

"They constitute the process by which the case is transferred from the state to the federal court, and, if when the defendant is brought into a federal court by the service of original process he can waive the objection to the particular court in which the suit is brought, clearly the plaintiff, when brought into the federal court by the process of removal, may in like manner waive his objection to that court. So long as diverse citizenship exists, the Circuit Courts of the United States have a general jurisdiction. That jurisdiction may be invoked in an action originally brought in a Circuit Court or one subsequently removed from a state court, and, if any objection arises to the particular court which does not run to the Circuit Court as a class, that objection may be waived by the party entitled to make it."

Then he concludes:

"As we have seen in this case, the defendant applied for a removal of the case to the federal court. Thereby he is foreclosed from objecting to its jurisdiction. In like manner, after the removal had been ordered, the plaintiff elected to remain in that court, and he is equally with the defendant precluded from making objection to its jurisdiction."

The doctrine of this case is reaffirmed in Western Loan & Savings Co. v. Butte & Boston Consolidated Min. Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101.

In the case at bar the defendant company not only petitioned for the removal, but appeared in the Circuit Court, and filed an answer to the complaint of the plaintiff and entered upon the trial of the case, all without objection. These acts are unquestionably tantamount to a waiver of jurisdiction, as to the particular district into which the case was removed; the court having general jurisdiction of the cause. The circumstance that defendant was mistaken respecting the citizenship of the plaintiff does not alter the case. It is altogether probable that, if it had known the real fact, it would have applied for removal just the same. But, that aside, the cause was just as well removable on the ground that plaintiff was an alien, and the defendant, having petitioned for the removal and having appeared generally in the federal court, must be taken to have waived all objection that the case was taken into the wrong district.

These considerations affirm the judgment of the court below, and it is so ordered.