### NORTHWESTERN LUMBER CO. v. CIZEN.

(Circuit Court of Appeals, Ninth Circuit. May 13, 1912.)

No. 2,051.

**1. COURTS (§ 276\*)—FEDERAL COURTS—DISTRICT OF SUIT—WAIVER OF OBJECTION.**

A nonresident defendant sued in a federal court in a district other than that of his residence by answering without objecting to the jurisdiction on that ground waives such objection.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 815; Dec. Dig. § 276.\*

Waiver of right as to district in which suit may be brought, see notes to Memphis Sav. Bank v. Houchens, 52 C. C. A. 192; McPhee & McGinnity Co. v. Union Pac. R. Co., 87 C. C. A. 634.]

**2. MASTER AND SERVANT (§ 286\*)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY.**

Plaintiff, who was employed in defendant's shingle mill, as he testified, was directed by the foreman to clean out a sawdust chute extending from the bottom of a circular shingle saw to the floor below. There was a hole or slot cut in the side of the chute just below the saw for the purpose, and plaintiff was pulling the sawdust from it with his hand, when his other hand, on which he was resting, slipped, and the hand in the chute was caught by the saw and injured. He was a foreigner, had worked inside of the mill but a few days at a different machine, and had no experience with the shingle saw. He testified that, when sent to clean out the chute, he was given no instructions, and was not warned of the danger, which arose from the fact that the saw extended a few inches below the mouth of the chute, and could not be seen when the latter was clogged. *Held*, that such testimony, although in some respects contradicted, was sufficient to require the submission of the question of defendant's negligence to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.\*]

**8. MASTER AND SERVANT (§ 217\*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMPTION OF RISK.**

In such case, plaintiff, who had not been employed at the machine where the injury occurred, and being unacquainted with the danger of the work he was directed to do, cannot be held to have assumed the risk therefrom.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.\*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Western Division of the Western District of Washington.

Action at law by Sam Cizen against the Northwestern Lumber Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The plaintiff in error, defendant below, appeals from a judgment rendered against it and in favor of defendant in error on account of personal injuries sustained by the latter through its alleged negligence.

The defendant was the proprietor of a sawmill and shingle mill combined. At the time of the accident out of which the action arises, and for some days prior thereto, the plaintiff was in the employ of the defendant, engaged in cutting up timbers, sawn to certain sizes, into blocks for sawing into shingles. The machine at which he was at work consisted of a jump saw, which, together with the movement of the timbers, is operated by levers. His position while at work was 12 to 14 feet distant from a shingle sawing machine known as No. 1, being the one at which the accident happened. The shingle machine, with the operation of the saw, was plainly visible from plaintiff's position. For carrying away the sawdust and refuse from the shingle machine a spout or chute was constructed, with its mouth about the lower extremity of the saw (the saw being circular in form), leading to a conveyor in the story below which carried the dust and refuse away as it dropped down the chute. A hole was cut in the casing of the chute at the side from 7 to 9 inches below the lower edge of the saw for the purpose of facilitating the clearing out of the chute when it became clogged. The mode of clearing the chute and the conveyor when they became clogged was to start the conveyor, the chute generally clearing itself when the débris was drawn away from below, though it was frequently necessary to clear the chute from above. This was done by the use of a stick, and by reaching in the hole in the casing with the hand, forcing the refuse down or drawing it out at the side until the dust would pass freely down again, and be carried off by the conveyor. The plaintiff was hurt while liberating the chute by reaching in the hole with his hand; the saw coming in contact with his hand and severing part of it. The present suit is to recover damages for the injury thus sustained. The complaint alleges, among other things, that: "While the plaintiff was at work in his usual and ordinary and regular work and employment at the said cut-off saw, the said foreman ordered and directed the plaintiff to go to the said shingle saw and remove the sawdust and refuse from the same, and carelessly and negligently failed to instruct the plaintiff in the way and methods necessary to perform the work in safety, carelessly and negligently failed to inform the plaintiff of the dangers concealed within the said frame, to wit, the revolving saw, and carelessly and negligently ordered this plaintiff to go to work from his regular employment to clean the said shingle saw, which was not any part of the plaintiff's work or employment, and the plaintiff in obedience to said order and without negligence on his part, and not knowing the said dangers or the method or ways necessary to perform the work in safety, proceeded to reach his arm in the hole in said casing or frame, and proceeded to remove the sawdust, when his hand suddenly came in contact with the hidden saw hidden by the said framework or casing, cutting off his left hand from about one-half inch from the wrist at the middle finger to about the knuckle of the first finger, maiming and injuring the plaintiff for life."

Morgan & Brewer, of Hoquiam, Wash., for plaintiff in error.

Govnor Teats, Hugo Metzler, Leo Teats, and Ralph Teats, all of Tacoma, Wash., for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). Three contentions are relied upon by counsel for plaintiff in error for reversal of the judgment: First, that the court has not jurisdiction of

the cause, for that the action is by an alien, to wit, a subject of Austria, residing in the state of Washington, against a California corporation; second, that plaintiff failed to make a case on the evidence sufficient to be submitted to the jury; and, third, that by plaintiff's employment he assumed the risk incident thereto; the danger being open and obvious.

[1] Answering the first contention, it may be true that the defendant had the right to be sued in the state of California, of which it was a citizen; but, if so, it was a right it might waive. The court having jurisdiction of the cause, the defendant's general appearance when sued in a district of which it was not a resident, without pleading specially to the jurisdiction over its person, had the effect to waive such jurisdiction. This is evidently what defendant did, as no such plea appears anywhere in the record. Having waived jurisdiction of its person, defendant is now amenable to the court in which it was sued. Katalla Co. v. Rones, 186 Fed. 30, 108 C. C. A. 132.

[2] The second question is based upon defendant's motion for nonsuit when plaintiff had rested his case, and the renewal of the motion when the testimony closed, both of which were denied by the court. A solution of the question must be found in a review of the plaintiff's evidence.

Plaintiff was an Austrian by birth, 26 years of age, and had been in this country 3 years and 8 months. He spoke and understood the English language imperfectly; an interpreter being required when his testimony was given. He had worked considerably around a sawmill, but generally in the yard, bearing off slabs and lumber. His first experience in operating any part of such a mill was when he was put to work at the jump saw by Mr. Carroll, the foreman, 16 days previous to the time he was hurt. He says that Carroll took him up and showed him how to cut the blocks off; that he (Carroll) cut four or five, and told the plaintiff to do the rest that way, and to pile them up on the other side. Then plaintiff's testimony runs as follows:

"Q. What were you doing on the day you were hurt? A. I was cutting blocks in the same place until noon; that is, sometimes I was cutting and sometimes the other fellow.

"Q. Did you ever have anything to do before this time with the shingle saw or the chute where the saw is? A. Not with that one. Of course, the one I was working with I did, but the other one I never had anything to do.

"Q. You never had anything to do with the chute to the shingle saw; that is, the saw is what I am talking about? A. No; I never have.

"Q. How did you get hurt? A. I had just got through cutting blocks and working around that saw where I usually work, and the boss came to me and told me to go and clean out that shingle saw in the chute that was there.

"Q. Where were you when the boss told you to do that? A. I was standing up, looking, and he came up behind me and took hold of my hand to show me like this [indicating], and told me to clean that saw.

"Q. What else did he tell you to do? A. He told me to clean all around there, and then he made a motion with his hand that he was going down underneath.

"Q. Then what did you do? A. I stooped down to clean that, and in a minute or so the boss passed over me by my feet while I was cleaning it.

"Q. Where were you and how were you cleaning it? A. Here was the bulkhead, or wall, or partition, or something of that kind, an inclosure. There was a little narrow passage and on this side was the saw, and also a hole. Then I stooped down in this position as I showed you, on my knee, and put my hand in that hole, cleaning out the sawdust, and with the other hand I

was on the floor, and through a little water or something my hand slipped, my right hand, and the left hand went up in the saw and got cut. * * *

"Q. What, if anything, did the foreman, Mr. Carroll, tell you about the dangers of the hole? A. He has not told me anything about any dangers, only he has whispered in my ear, and told me to clean the place.

"Q. What did he say about how to do the work and not get your hand in the saw? A. He has not said anything to me about it.

"Q. What did he say, if anything, about using a stick? A. He has not said anything to me regarding the stick.

"Q. Why didn't you use a stick? A. I didn't know anything about it. I never saw a stick and did not know how to get at it. I never saw how it was worked before.

"Q. Did you ever clean out that chute before? A. No, sir.

"Q. Did you ever notice how it was cleaned out before? A. No, sir.

"Q. What position were you in when the foreman went by you at the chute? A. He just passed over me. It was narrow and he passed by my feet.

"Q. Where was your hand? What were you doing at that time? A. At that time I was cleaning right inside the pipe.

"Q. Did you have your hand and arm in the hole? A. Yes, sir; in the hole I had my hand.

"Q. What, if anything, did the foreman say to you then? A. He did not say anything to me. He looked up this way and passed by me.

"Q. That is, you looked up at the foreman? A. I did not have my head up. I was stooped down and had my head around this way, and saw him pass by. I was afraid that the carriage running up there would hit me in the head.

"Q. How far above your head did the carriage run? A. I don't know just exactly. I never worked there before.

"Q. Was the carriage running at that time? A. Yes, sir; he was making shingles steady at that time.

"Q. How full, if any, was the chute with sawdust and stuff? A. I don't know just how much was there. I know I was pulling it out with my hands, and the other hand slipped, and that went up there and was caught. Before I went there, there was a lot of sawdust often on the outside around there.

"Q. What do you say you were doing with the sawdust at that time? A. I was pulling it out of the hole.

"Q. How long were you pulling it out of the hole before you were hurt? A. Oh, somewhere around two or three minutes, something like that, until I got the sawdust cleaned out.

"Q. How much of the sawdust had you got cleaned out when you got hurt? A. Oh, somewhere around about a sack or more."

And on cross-examination:

"Q. You say that Mr. Carroll had been filing saws? A. When I used to saw I used to see him before me filing the saws.

"Q. I mean at the time you were hurt; just before you were hurt? A. No; I did not see him until that afternoon when he came to work. I don't know where he was working until he told me to clean the chute.

"Q. What did he say to you? A. He told me to clean those few blocks that was right in front of me, out of the way, and then to go over and clean that chute where the sawdust gathered.

"Q. He told you to move the blocks, and then clean up the chute? A. It was not actually blocked, but the caps from the shingles that was in the way, and he told me to clean that so that I could get up and then clean the chutes from the sawdust. It was a narrow place there.

"Q. He told you to clean up around your machine, did he? A. No; he did not around my machine. It was not dirty, but around the other one. I didn't have anything to do at that time.

"Q. You had nothing to do? A. No.

"Q. You were not getting any blocks on your machine? A. No, sir.

"Q. No shingle blocks? A. No, sir.

"Q. So that you had no duties at that time at your machine? A. No; I didn't have anything to do.

"Q. Where did Mr. Carroll go after he spoke to you?  A. When he told me to go and clean that, he turned back, and then he came towards me and passed over me, and that is all I saw of him.

"Q. Mr Carroll spoke to you and then went down below to clean out the chute?  A. He told me to clean that, and then he made a motion for me that he was going down there.

"Q. And he did go down there, didn't he?  A. He passed over me.  I don't know where he went.

"Q. And he went right away when he spoke to you?  A. He went when he told me to clean out.

"Q. He went downstairs?  A. He made a motion to me that he would go down there, but I don't know where he went.

"Q. What kind of a motion did he make?  A. He came to me, and always had a habit of grabbing me by the shoulder, and telling me something to do. At that time he half whispered to me, and told me to clean that, and made a motion with his hand that he would go down below and help clean, because the machine runs, and I couldn't hear everything that they say.

"Q. He went right away, and you did not see him any more?  A. I did not see him until the others had hold of me, and then I saw him."

Carroll denied flatly that he ever directed the plaintiff to clean out the chute, and asserted, on the contrary, that plaintiff endeavored to do it of his own volition.  In this he is in a measure corroborated.  The matter of the credibility of the witnesses, however, was for the jury, and, it having found for the plaintiff, there is nothing left for the court except to determine whether plaintiff's testimony was sufficient upon which to carry the case to the jury.

The special grounds for recovery are that the defendant ordered and directed the plaintiff to remove the sawdust and refuse from the chute and about the shingle saw and negligently failed to instruct the plaintiff as to the method of doing it, or to inform or warn him of the danger attending the duty assigned him.  Now, it would seem that plaintiff was wholly inexperienced in the especial work assigned him, and was but little acquainted with the shingle saw and its operation; nor had he any particular knowledge respecting the safe method of clearing the chute of its débris, and in this he was not instructed, nor was he warned of the danger attending the service.  That it was more or less hazardous to attempt the removal of the sawdust clogged in the chute by reaching in with the hand through the hole provided for that purpose can hardly be disputed.  Manifestly, the task was not so simple that an inexperienced person could discharge it without danger to himself.  Beyond this, the saw, extending as it did slightly into the mouth of the chute, which was filled to overflowing with sawdust and débris, constituted a dangerous contrivance, more or less obscured. and in a way formed a trap to the unwary and inexperienced.  We are of the opinion that the evidence was sufficient for the jury's consideration upon the question of defendant's negligence in failing to instruct the plaintiff touching the especial work assigned him, and also in failing to properly warn or caution the plaintiff of the danger attending the work.  In this connection it is urged that the slipping of plaintiff with his right hand, which caused him to throw up his left hand, thus bringing it into contact with the saw, was the proximate cause of the injury, and not the defendant's alleged negligence.  The slipping, however, was merely an incident in the course of carrying out the fore-

man's directions. Had the plaintiff been instructed as to the proper method of doing the work, or had he been warned of the danger lurking within the mouth of the chute, he might not have gotten into a position to slip or be hurt. The nonsuit in either instance was therefore rightly denied.

[3] Lastly, did the plaintiff assume the risk of this particular employment? We think not, for the reason that he was newly assigned to the work, and, while his previous employment for a short time brought him in proximity to the shingle machine at which he was hurt, he was not called upon to note or observe its operation and the peculiar dangers attending such operation, nor especially the dangers attending the clearing of the sawdust from the clogged condition of the chute, which obscured somewhat the real danger to the workman.

The judgment of the Circuit Court will be affirmed.