### SIEGESMUND v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court of Appeals, Seventh Circuit. January 4, 1916.)

No. 2300.

1. MASTER AND SERVANT ⬦⟶286—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

Plaintiff, a machinist's helper, was holding by an iron bar a journal from turning on the axle, while the machinist was chipping therefrom with a chisel and hammer. On the machinist's order he laid down the bar, helped to turn the box over, and without any further direction stooped down to pick up the bar. While doing so the machinist resumed chipping on the box, and a chip struck plaintiff's eye. There was no protection from the chips, nor warning that the machinist was about to resume chipping. There was evidence that chipping such boxes was particularly dangerous to bystanders, and that it was a good practice, and the general practice in that shop, to provide some barrier, such as a canvas, board, box, or broom. *Held,* that the evidence made a question for the jury as to the employer's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ⬦⟶286.]

2. MASTER AND SERVANT ⬦⟶288—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

The danger to plaintiff was not necessarily incident to his employment, or so obvious that the court could say as a matter of law that he assumed the risk and the question whether he knew of the danger or ought reasonably to have anticipated it, should have been left to the jury, as it might well be presumed that when he knew chips were being driven towards him, he averted his head or closed his eyes, and it might well be concluded that he did not know and could not reasonably have anticipated that chipping would be resumed at that time.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. ⬦⟶288.]

In Error to the District Court of the United States for the Eastern District of Wisconsin; Ferdinand A. Geiger, Judge.

---

⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by Otto Siegesmund against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

The complaint in this action charges that plaintiff, Siegesmund, was employed by defendant, Chicago, Milwaukee & St. Paul Railway Company, as a machinist's helper, working in its locomotive repair shops at Milwaukee; that on April 7, 1914, he was injured while engaged in helping the machinist make repairs on a locomotive, which was used by defendant in interstate commerce; that defendant was negligent in failing to supply plaintiff a safe place to work, in making the repairs in the manner in which they were made, and in failing to supply and use proper means and appliances whereby the accident and injury to plaintiff might have been avoided; and that the machinist, under whom plaintiff then was working, was negligent in the manner of doing his work, whereby the machinist, who was with a chisel and hammer chipping off pieces of metal from a part of the locomotive, caused a piece of such metal to fly off and strike plaintiff's eye.

Defendant's answer admits the accident and injury to plaintiff while in its employ as a machinist's helper, doing repair work on a locomotive used in interstate commerce, and for defense alleges that plaintiff was for several months prior to his injury doing the same kind of work that he was then doing, and was familiar with the manner in which the work was done, and its dangers, and that he assumed the risk incident thereto. There is also a general denial of every other allegation of the complaint.

The evidence tends to show that the machinist ordered his helper, Siegesmund, to get a tool box and an iron bar and bring them to a place in the shop where, on a track, there was a pair of locomotive driving wheels about 58 inches high, having spokes with openings between, connected together by an axle, and fastened to the axle, between the wheels, and near one of them, was a journal or driving box of about 200 pounds weight on which the machinist was about to do some work; that these driving wheels were part of a locomotive which defendant was using in interstate commerce, and then in the shop undergoing repairs; that the helper, standing on the outside of the wheel nearest the box, by order of the machinist inserted the bar (which was about 2 feet long) between the spokes of the wheel, with it holding the box to keep it from turning about on the axle, and that while he was in this position, the machinist, being between the wheels, with a chisel and hammer began to chip from the upper surface of the box while so held; that after chipping about 10 minutes the helper, on order of the machinist laid down the bar, and with his hands reached in between the spokes to help the machinist turn over the box on the axle, and that when it was turned, the helper without further direction from the machinist, stooped down to pick up the bar, and that while he was in the act of picking up the bar, the machinist, without the helper's aid, resumed chipping on the box, and a metal chip thereby dislodged struck the helper's eye, causing its loss; that while he was picking up the bar he was close to the machinist, the wheel being between them; that there was no protection from the chips, nor warning to the helper that the machinist was about to resume chipping.

The evidence tends further to show that this helper had worked for the company several months, helping the machinist as from time to time directed, prior to which he was for 12 years an iron worker for the Illinois Steel Company, helping in the work of rolling iron shapes; that he had more or less experience in observing the chipping of metal, and that this was his first experience in working on one of these boxes, and that he knew that a metal chip striking the eye was likely to cause injury; that there was no other chipping then being done in the vicinity of where they were working, the nearest workman being then about 50 feet away engaged in putting brakes on an engine; that the helper did not know why the box was turned over, nor suppose that there was to be any chipping done after the box was turned, and that he did not think that chipping of the box would or could then be done unless he held it, as he had just before held it for chipping the other side.

The testimony of witnesses other than the plaintiff tends to show that

chipping such boxes was particularly dangerous to bystanders, unless something was interposed for the chips to strike against; that it was usual in that shop to chip those boxes before putting them on the axle, and in a place away from other work; that it is good practice in chipping, and was the general practice in that shop, to provide some barrier, such as a canvas, a board or a box or a broom, for the chips to strike against; and that the machinist in chipping has control over the direction in which the chips will fly.

On the trial, after presentation of the case for plaintiff, defendant's motion for a directed verdict in its favor was granted, and a verdict rendered accordingly. Motion for a new trial being overruled, judgment for defendant was entered. Error is assigned on action of the court in directing the verdict.

J. Elmer Lehr, Julius Kiefer, Leo Reitman, and Horace B. Walmsley, all of Milwaukee, Wis., for plaintiff in error.

C. H. Van Alstine and Rodger M. Trump, both of Milwaukee, Wis., for defendant in error.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] That the evidence tended to prove negligence on the part of the company resulting in the accident does not seem to be seriously controverted. The evidence of the special danger in this particular work, of the necessity, and the practice in this shop, of imposing some barrier for the chips to strike against, of the control the machinist may exercise as to the direction in which the chips will fly, and of the act of beginning to chip while Siegesmund was in the particular situation of picking up the bar, make it plain that if the determination of this cause had depended wholly on whether or not negligence on the part of the company were shown, that question should and would have been submitted to the jury, and with it, of course, any question of contributory negligence of the plaintiff, which, if shown, would not under the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665])—the applicability whereof is not controverted—bar recovery, but would be considered in reduction of damages.

[2] The controlling question here is whether, under the evidence, the District Court was warranted in finding, as a matter of law, that the injury to the plaintiff was the result of the dangers and hazards usual to the plaintiff's employment, the risk whereof he assumed. In respect to this employment, the evidence tends to show that where chipping was being done in this shop, particularly on such boxes, the flying of chips could be and usually was avoided by the use of means to intercept them. From this it might be concluded that the flying of metal chips was not a danger which was usual, or of necessity incidental to the work in and about the shop, even if it appeared that sometimes such protective and preventive means were not employed, and that at such times chips might fly about.

In order to conclude that an employé in this shop, who was injured by flying chips, assumed the risk of such injury, it must appear from the evidence, not only that in his then particular employment there was such danger from flying chips, but also that the employé knew of such danger, or by the exercise of reasonable care ought to have

known or anticipated that there would be flying chips thereabout which might injure him. The helper was under the machinist's orders, working wherever and at such work as he was directed. At the machinist's orders he inserted his bar between the spokes of the wheel and held the box in place, while the machinist, just on the other side of the wheel, was chipping the box, driving the chips toward the direction where the helper was standing. It does not appear there was any other chipping in the shop at that time; at least, not in the vicinity of the helper. The helper testified that there were no machines near by, and that the nearest workman was upwards of 50 feet away, engaged in putting brakes on a locomotive.

Such is the instinct of self-preservation, and particularly that of guarding the eyes from injury, that it may well be presumed that, knowing chips were then being driven towards him, he averted his head or closed his eyes to protect the eyes from injury. Indeed, it might well be said that, failing to do so, and voluntarily remaining in a situation in which he knew the chips were being driven towards him, and appreciating the danger therefrom, while in such situation he assumed the risk of injury which might then have come from the flying chips. But, when the machinist ceased chipping and ordered him to drop his bar and help turn the box about the axle, at once a different situation and relation arose. Siegesmund testified he did not know why the box was to be turned, that he did not know any further chipping was to be done upon it, and that he supposed that, if chipping was to be done, he would first be required to insert his bar and hold the box just as he had done shortly before.

In the brief for defendant in error it is stated:

"Appellant knew exactly what the machinist had to do to finish this particular work, and knew, furthermore, that the machinist was through with him after the box had been turned."

If by this it is meant that plaintiff in error knew that chipping was to be done on the other side of the box, the evidence does not support the assertion; neither can it be said that he knew that the machinist was through with him. He may, as he testified, have assumed that the work of chipping was completed; and the fact that his machinist, under whose direction he was, had as yet given him no further orders, might have warranted him in concluding he was to remain there until the machinist told him to go elsewhere, or to do something else.

In the same brief it is further said:

"There is no evidence that plaintiff had been ordered to pick up the bar, * * *" nor "that there was any necessity to pick up the bar at that particular moment."

Presumably, unless directed to the contrary, he was expected to pick up the bar which he had thus laid down, and to pick it up when he did seems a rational and natural act, and the evidence suggests no plausible reason why he should have delayed it. Might it not, with greater show of reason, be inquired: Why did not the machinist wait with resuming his chipping until he had some assurance that the helper was not in special danger therefrom?

If, as contended in the brief for the company, the helper's work on

this box was done, he was nevertheless subject to the further direction of the machinist, who might well have supposed the helper would pick up the bar and remain where he was until ordered elsewhere by the machinist. If the helper had any reason to believe that chipping would then be resumed in such dangerous proximity to himself, he would have had opportunity at least to have taken such precaution as to avert his head, and thus in large measure protect his eyes.

From the evidence it might well be concluded that danger to employés from flying chips was not necessarily and usually incident to employment in and about that shop, and that plaintiff in error in the work in which he was then engaged did not know, and could not reasonably have anticipated, that chipping would at that time be done. The danger to Siegesmund from flying chips not being necessarily incident to his employment, or so obvious that the court may say as a matter of law that he assumed the risk therefrom, the question whether he knew of the danger, or ought reasonably to have anticipated it, should have been left to the jury. Texas & Pac. Ry. Co. v. Swearingen, 196 U. S. 51, 25 Sup. Ct. 164, 49 L. Ed. 382; Oregon Short Line & U. N. Ry. Co. v. Tracy, 66 Fed. 931, 14 C. C. A. 199; Peirce v. Clavin, 82 Fed. 550, 27 C. C. A. 227; Penna. Ry. Co. v. Jones, 123 Fed. 753, 59 C. C. A. 87; N. P. Ry. Co. v. Wendel, 156 Fed. 336, 84 C. C. A. 232; Katalla Co. v. Rones, 186 Fed. 30, 108 C. C. A. 132; Benson Lumber Co. v. McCann, 223 Fed. 1, 138 C. C. A. 415.

The judgment is reversed, and the cause remanded, with direction to the District Court to grant a new trial.